REVERSED and REMANDED for proceedings consistent with this opinion.

**Laird PALMER et al.,
Plaintiffs-Appellants,**

v.

**Garson C. JACKSON, Clerk of the Supreme Court of Texas in its statutory role pursuant to the State Bar Act of Texas, Defendant-Appellee.**

No. 78-2716.

United States Court of Appeals,
Fifth Circuit.

May 19, 1980.

---

15. We emphasize that we intimate no opinion as to the validity of the Mobile bank's claim.

James M. Simons, Austin, Tex., for plaintiffs-appellants.

John L. Hill, Atty. Gen., Douglas B. Owen, Lonny F. Zwiener, Asst. Attys. Gen., Austin, Tex., for defendant-appellee.

Before WISDOM, FAY and TATE, Circuit Judges.

FAY, Circuit Judge:

Appellants, ten licensed Texas attorneys, instituted a class action against various officials of the State Bar of Texas.[1] They now seek reversal of the district court order dismissing the case on *Pullman* abstention grounds. Affirming the judgment of the district court, we hold that abstention is appropriate in this case.

The State Bar of Texas (hereinafter Texas bar or state bar) was created as "an administrative agency of the Judicial Department of the state" by the State Bar Act, (the Act), Tex.Rev.Civ.Stat.Ann. art. 320a–1, § 2 (Vernon) (Supp.1977).[2] The

---

**1.** The defendants in the case are Garson C. Jackson, clerk of the Supreme Court of Texas; the Supreme Court of Texas in its statutory role pursuant to the State Bar Act of Texas; Travis D. Shelton, President of the State Bar of Texas; Louis J. Weber, Jr., Chairman, Board of Directors of the State Bar of Texas; and all members of the Board of Directors, State Bar of Texas, individually and in their official capacities.

**2.** In 1979, after the institution of this lawsuit, section 2 of the State Bar Act was amended to read:

Sec. 2. The State Bar of Texas established under the laws of this state is continued as a public corporation and an administrative agency of the judicial department of government. It is designated as the State Bar. This legislation is in aid of the judicial department's powers under the constitution to regulate the practice of law and not to the exclusion of those powers. The Supreme Court of Texas, on behalf of the judicial department,

Texas bar is an "integrated" bar; section 3 of the State Bar Act requires that

[a]ll persons who are now or who shall hereafter be licensed to practice law in this State shall constitute and be members of the State Bar, and shall be subject to the provisions hereof and the rules adopted by the Supreme Court of Texas; and all persons not members of the State Bar are hereby prohibited from practicing law in this State.

Section 4(b) of the Act empowers the Supreme Court of Texas to prescribe fees for membership in the state bar; such fees are to be expended by the court or under its direction for the purpose of administering the State Bar Act. Attorneys who fail to pay bar fees are suspended from state bar membership and are not permitted to practice law in Texas. Rules Governing the State Bar of Texas, art. IV, § 5.[3]

In April, 1974, the board of directors of the Texas bar passed a resolution which authorized the bar president to contract for the construction of a new state bar building. The board did not consult with the state bar membership about the necessity or desirability of constructing the new bar building. The Texas Law Center was subsequently erected on state property in Austin, Texas. In order to finance the building, the board contracted a debt of at least six million dollars,[4] secured in part by a deed of trust for four million dollars to the American National Bank of Austin.

From the time the new bar building was first proposed, the directors, officers, and staff of the state bar repeatedly assured the bar membership that no dues money would ever be used to pay for any part of its construction. It was contemplated that the building would be paid for in its entirety by voluntary contributions and grants. At that time the State Bar of Texas had a ruling from the Internal Revenue Service that such contributions would be tax deductible.[5] In July, 1977, however, the IRS issued a new ruling holding that contributions to an integrated state bar that has private as well as public purposes are not deductible.[6] This ruling brought an end to the voluntary contributions, and forced the state bar to consider new means of financing.

In January, 1978, the state bar's board of directors requested the Texas Supreme Court to conduct a referendum of the bar membership to determine

[w]hether the Court shall order a one-time fee assessment of all of the members of the State Bar of Texas under the age of seventy (70) years on June 1, 1978, for the sole purpose of reducing any indebtedness created by the construction of the Texas Law Center. . . .

Record, vol. I, at 37. According to appellants, the board, officers, and staff of the state bar used every available resource of the organization, including its exclusive control over communication to the membership, to promote passage of the referendum by presenting only one side of the issue. See Record, vol. I, at 7. The one-time fee assessment was approved by a majority of the bar membership voting, and on May 3, 1978, the Texas Supreme Court entered an order setting forth the assessment schedule and requiring payment of the first fee installment by June 1, 1978. Record, vol. I, at 37.

Following the passage of the one-time fee assessment, ten Texas attorneys (appellants) filed this class action in June, 1978, on behalf of themselves and all others simi-

---

shall exercise administrative control over the State Bar under this Act. Tex.Rev.Civ.Stat.Ann. art. 320a–1, § 2 (Vernon) (Supp.1979).

3. The Rules are included in Tex.Rev.Civ.Stat. Ann., Title 14, Appendix (Vernon) (1973). The Rules were promulgated by the Supreme Court of Texas under the statutory grant of authority in section 4 of the State Bar Act, Tex.Rev.Civ. Stat.Ann. art. 320a–1 (Vernon) (1973).

4. Appellants assert that exact figures on the total indebtedness have never been provided to them. Record, vol. 2, at 6.

5. Rev.Rul. 59–152, 1959–1 C.B. 54.

6. Rev.Rul. 77–232, 1977–2 C.B. 71, revoking Rev.Rul. 59–152, 1959–1 C.B. 54.

larly situated. In their first cause of action, they allege that the conduct of the defendants-appellees deprived appellants and the class they represent of rights, privileges, and immunities secured by the United States Constitution. The complaint asserts that;

1. Plaintiffs' right to free association guaranteed by the First Amendment is abridged. Plaintiffs are compelled to be members of the State Bar of Texas. This compulsory association, and its incidents denies Plaintiffs federally protected rights. The incidents of this compelled association include, but are not limited to, utilizing Plaintiffs' dues money for purposes, political and otherwise, which are antithetical to Plaintiffs' interests and welfare.

2. Plaintiffs' right to Due Process of Law guaranteed by the Fifth and Fourteenth Amendments is abridged by the actions of Defendants in illegally assessing dues against Plaintiffs. If Plaintiffs do not pay the assessment they will be deprived without Due Process of Law of their right to pursue their profession and means of livelihood.

3. Plaintiffs are denied Equal Protection of the Laws guaranteed by the Fourteenth Amendment. *Inter alia*, the actions of Defendants impose a tax upon only one class of citizens for the purpose of paying for a public building which is owned by all citizens of the State of Texas.

Complaint, Record, vol. I, at 8–9.

Appellants' claims arising under Texas state law are set forth in their second cause of action, which asserts:

B. The conduct of Defendants, the State Bar, its agents and officers in incurring and approving a debt on behalf of the State Bar of Texas, an agency of the State of Texas, violated the rights of Plaintiffs under the Constitution of the State of Texas, Texas Statutes, and the State Bar Rules in the following aspects:

1. Plaintiffs are denied equal protection of the law in violation of Article I, § 3 of the Texas Constitution, in that they are being treated differently than the remaining citizens of the State of Texas by being "assessed" to pay for a State building. There is no rational basis for such different treatment.

2. Plaintiffs have been damaged by the "assessment" and the threat of suspension of their membership in the State Bar because of the actions of the Board of Directors and Officers of the State Bar in 1974 in encumbering real and personal property of the State of Texas. The current Board of Directors and Officers of the State Bar, Defendants herein, have acquiesced and approved of the encumbering of State property. The actions of the Board in connection with encumbering the property for the Texas Law Center constitute a violation of Article III, §§ 44, 49, 50, 51, 52(a), and 55 of the Texas Constitution. Because such actions were in violation of the Texas Constitution any encumbrance on such property is invalid, illegal and unenforceable.

3. The actions of the Board and Officers of the State Bar set forth herein . . . are also in violation of Article II, § 1 of the Texas Constitution in that these Defendants, acting on behalf of an agency of the Judicial Department of the State of Texas have attempted to exercise powers specifically delegated to the Legislative Department in Article III, §§ 44, 49, 50, 51, 52(a), and 55 of the Texas Constitution.

4. The actions of the Board of Directors and Officers of the State Bar set forth herein . . . constitute a violation of the State Bar Rules, Title 14—Appendix to Article 320a–1, which have been promulgated pursuant to the State Bar Act, Tex.Rev.Civ.Stat.Ann. art. 320a–1. These Defendants have violated their own rules in that:

a. Defendants' actions . . . made the State Bar liable for a debt in excess of the amount of money in the treasury not subject to existing liabilities in violation of Article VI, § 5 of the State Bar Rules.

b. Defendants . . . entered a contract or incurred a debt that could not be paid from receipts for the current year without the approval of the members of the State Bar by referendum in violation of Article X, § 3 of the State Bar Rules.

c. By failing to conduct a referendum as required by Article X, § 3 of the State Bar Rules . . . Defendants violated Article III, § 5 of the State Bar Rules.

Complaint, Record, vol. I, at 9–10.

On July 25, 1978, the district court held a hearing on plaintiffs' (appellants') motion for preliminary injunction and defendants' (appellees') motion to dismiss. The district court concluded "that although Plaintiffs' complaint does present federal questions, the paramount issues involve questions of state law, that those questions have not yet been decided by the Courts of the State of Texas, and that the case can be properly and fairly adjudicated on those grounds." Memorandum Opinion and Order, Record, vol. I, at 90. Agreeing with defendants that "abstention is called for in this case," the court dismissed the action without prejudice so that the federal question could be raised again in the federal forum once the Texas courts had the opportunity to address the state law matters. Id. at 90–92.

In this appeal, appellants argue that the district court erred in dismissing the case on abstention grounds. They valiantly, but vainly, attempt to distinguish their case from others in which the abstention doctrine has been applied. Examination of appellants' complaint and analysis of the abstention doctrine convinces us that the district court correctly decided to abstain.

### The Pullman Abstention Doctrine

Decisions of the Supreme Court have established three general categories of abstention.[7] See Colorado River Water Conservation District v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). At issue before us is the Pullman abstention doctrine, "appropriate 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.'" Id. at 814, 96 S.Ct. at 1244; Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In Pullman, a railroad company attacked an order of the Texas Railroad Commission, claiming the order to be unauthorized by Texas law and violative of the Federal Constitution. The Court determined that if the assailed order was not within the railroad commission's authority under Texas law, the constitutional issue would not arise. The Court decided to withhold decision of the constitutional issue pending a state court proceeding to secure a definitive constructive of the state statute. 312 U.S. 496, 501–02, 61 S.Ct. 643, 645–646, 85 L.Ed. 971.

The Pullman case establishes two prerequisites for Pullman abstention: (1) there must be an unsettled issue of state law; and (2) there must be a possibility that the state law determination will moot or present in a different posture the federal constitutional questions raised. In the instant case appellants' claims meet both of these requirements.

### A. The Unsettled Issue of State Law.

Examination of appellants' complaint, supra, reveals numerous questions of state law. The validity of the encumbrance on state property, the legality of the fee assessment, whether the failure to pay the fee assessment would result in withdrawal

7. The three abstention doctrines are referred to as Pullman, Burford, and Younger abstention. The Pullman doctrine is set forth in the text. Burford-type abstention is appropriate "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." Colorado River Water Conservation District v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); see Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Younger abstention applies where "absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." 424 U.S. at 816, 96 S.Ct. at 1245; see Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

of state bar membership, and whether the actions of the bar officers and directors violate the constitution or laws of the state of Texas or the rules governing the Texas bar, are all issues which can and should be resolved in state court.

Appellants do not deny that their case raises unsettled issues of state law.[8] Their argument against abstention is that in this case, the state court which would decide the unresolved state law issues under the abstention procedure is a party to the litigation. Appellants claim that the inclusion of the Supreme Court of Texas as a named defendant in the lawsuit distinguishes this case from all other cases on abstention and makes the abstention procedure inappropriate.

> First, the fact that the Court is involved in the actions and circumstances that are in controversy renders it a suspect forum to resolve state law questions. Second, the Court has already determined the issue administratively because it issued the May 3, 1978 Order. Presumably, the Supreme Court of Texas would not have acted in any manner it thought was illegal. This lawsuit alleges that the May 3, 1978 Order for payment of the fee-assessment was illegal and invalid. To require these Plaintiffs to seek resolution of this issue in state court would require that they ask the Texas Supreme Court to declare that its acts were illegal, that its administrative determination was in error, and to enjoin itself from enforcing its illegal acts and determinations.

Brief for Appellants at 7.

■ Appellants contend, in essence, that the abstention doctrine should not apply to this action because there is no state forum which can fairly adjudicate the state law issues. We find this argument against abstention unpersuasive. The fact that the Texas Supreme Court has taken certain action in its role as regulatory authority of the Texas bar does not render the court incapable of reviewing that action as a judicial body.

A recent Texas Supreme Court decision disposes of appellants' claim that the state court cannot participate in this lawsuit. In *Cameron v. Greenhill,* 582 S.W.2d 775 (Tex. 1979), a licensed Texas attorney filed suit in state court against the nine justices of the Texas Supreme Court. The plaintiff challenged the supreme court order establishing the special fee assessment against state bar members (the same assessment at issue in this case), asserting that the order did not comply with Texas' Administrative Procedure and Texas Register Act, Tex.Rev.Civ. Stat.Ann. art. 6252–13a (Vernon) (Supp. 1979). In her appeal to the Texas Supreme Court, plaintiff filed a motion urging that the defendant justices were disqualified from determining the merits of her case. The court held that it would not violate due process for the supreme court justices who ordered the referendum on the fee assessment at the request of the state bar directors to determine the legality of such assessment. *Id.* at 777. In declaring itself qualified to hear the case, the court noted that "[t]o hold that merely naming a judge as a party would disqualify him would put power in the hands of litigants to frustrate our judicial system." *Id.* at 776. *See also Withrow v. Larkin,* 421 U.S. 35, 57, 95 S.Ct. 1456, 1469, 43 L.Ed.2d 712 (1975) ("it is not contrary to due process to allow judges and administrators who have had their initial decisions reversed on appeal to confront and decide the same questions a second time around."); *Ables v. Fones,* 587 F.2d 850 (6th Cir. 1978).[9]

---

**8.** Although appellants state at one point that "[t]here is nothing unsettled about the state law," Brief for Appellants at 8, they also argue that "[i]n this case, the state court which would decide unresolved state law issues . . . is a party to the litigation." *Id.* at 5.

**9.** In *Ables* two Tennessee attorneys challenged the authority of the Supreme Court of Tennessee to adopt a rule requiring annual registration

of attorneys and payment of an annual license fee. The sixth circuit upheld the Tennessee court's determination that it had authority to promulgate such a rule *and to hear original challenges to it.* 587 F.2d at 852. *See also Buschbacher v. Supreme Court of Ohio,* No. C–2–75–743, 75–751, 76–309 (S.D.Ohio 1976), *aff'd sub nom. Cuyahoga County Bar Ass'n v. Supreme Court of Ohio,* 430 U.S. 901, 97 S.Ct.

Although the inclusion of the Supreme Court of Texas as a defendant in the suit does distinguish this case from other cases applying the abstention doctrine, we find the distinction insignificant. Texas caselaw indicates. that it is not uncommon for the Texas appellate courts to review rules adopted by the state's supreme court and, where necessary, to hold such rules ineffective because they conflict with a constitutional or statutory provision. *See, e. g., Few v. Charter Oak Fire Ins. Co.*, 463 S.W.2d 424 (Tex.1971); *Drake v. Muse, Currie & Kohen*, 532 S.W.2d 369 (Tex.Civ.App. 1975), *writ refused*, 535 S.W.2d 343 (Tex. 1976); *cf. Hexter Title & Abstract Co. v. Grievance Committee, Fifth Congressional District, State Bar of Texas*, 142 Tex. 506, 179 S.W.2d 946 (1944). In the instant case the state court's prior administrative involvement in the activities of the state bar is insufficient justification for depriving the state court of an opportunity to judicially decide the issues of state law presented.

**B. The State Law Determination Will Change the Posture of the Federal Constitutional Claims.**

Having decided that there are unresolved issues of state law which can and should be decided by the Texas courts, we now must determine whether the federal constitutional questions may be mooted or presented in a different posture by the resolution of the state law issues.

Appellants allege that their federal constitutional rights of free association, due process, and equal protection of the law

have been violated by the actions of defendants. *See* Complaint, quoted *supra*. Appellants' due process and equal protection claims arise out of the contested one-time fee assessment. They argue that the assessment denies them equal protection of the law because it is in fact a tax imposed on one class of Texas citizens, i. e., lawyers, for the purpose of paying for a public build-. ing owned by all state citizens. If they do not pay the assessment, appellants assert, they will be deprived without due process of their right to practice law in Texas.

■ Clearly, a state court finding in appellants' favor on the legality of the one-time fee assessment under Texas law would moot two of appellant's claims under federal law. If the Texas courts were to agree with appellants that construction of the law center was mismanaged, that the debt on the building was illegally incurred, that the fee assessment was improper, and that continued membership in the Texas bar could not be made contingent upon payment of the improper assessment, appellants' federal due process and equal protection claims would never arise. *See Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941).

A finding in appellants' favor on the state law issues in the case would eliminate a significant part of the federal cause of action. The only constitutional issue remaining would be whether appellants' first amendment right to free association is abridged by making membership in the state bar of Texas compulsory.[10] According to the complaint

1167, 51 L.Ed.2d 577 (1977) (Ohio Supreme Court held qualified to determine the constitutionality of its own rule requiring attorneys to register and pay a biennial fee.)

**10.** Appellants' first amendment challenge to compulsory bar membership is foreclosed to a certain extent by the Supreme Court's decision in *Lathrop v. Donohue*, 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961). *Lathrop* held that the rules and bylaws of the Wisconsin bar, which require lawyers practicing in Wisconsin to become members of the integrated state bar and to pay reasonable annual dues, do not violate the fourteenth amendment. The Court said:

> We think that the Supreme Court of Wisconsin, in order to further the State's legitimate interests in raising the quality of professional services, may constitutionally require that the costs of improving the profession in this fashion should be shared by the subjects and beneficiaries of the regulatory program, the lawyers, even though the organization created to attain the objective also engages in some legislative activity. Given the character of the integrated bar shown on this record, in the light of the limitation of the membership requirement to the compulsory payment of reasonable annual dues, we are unable to find any impingement upon protected rights of association.

[t]he incidents of this compelled association include, but are not limited to, utilizing plaintiffs' dues money for purposes, political *and otherwise*, which are antithetical to plaintiff's interests and welfare.

Record, vol. I, at 8. (emphasis added). While a Texas court's decision of the state law issues in this case may not completely moot appellants' first amendment claim, there is certainly a possibility that the posture of this claim might be altered by a finding that the one-time fee assessment was illegally imposed. Presumably the reference in the complaint to "purposes" other than political for which appellants' dues money is utilized includes such purposes as the payment of the debt on the state bar building and the promotion of the referendum on the special fee assessment. A state court determination that appellants' dues had been used for purposes illegal under Texas law would narrow the questions raised under federal law. Although such a determination would not "avoid in whole or in part the necessity for federal constitutional adjudication," it might "at least materially change the nature of the problem." *Harrison v. N.A.A.C.P.*, 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959).

> *Id.* at 843, 81 S.Ct. at 1838. Because the issue of impingement upon rights of free speech through the use of exacted dues was not concretely presented for adjudication, the Court refrained from deciding whether the appellant in the case could constitutionally be compelled to contribute his financial support to political activities which he opposed. The issue was reserved because "[n]owhere are we clearly apprised as to the views of the appellant on any particular legislative issues on which the State Bar has taken a position, or as to the way in which and the degree to which funds compulsorily exacted from its members are used to support the organization's political activities." *Id.* at 845–46, 81 S.Ct. at 1839. We question whether the record in the instant case presents any sounder a basis for deciding the constitutional claim that first amendment rights are violated by the utilization of appellants' dues money "for purposes, political and otherwise, which are antithetical to [appellants'] interests and welfare." Complaint, Record, vol. I, at 8.

11. Generally a federal court, when it has determined to abstain, should not dismiss the action but should stay it and retain jurisdiction pend-

It should be pointed out that the district court's decision to abstain from this case does not forever bar appellants from raising their constitutional claims in federal court. Appellants' complaint does present federal questions. The district court, however, correctly decided that the paramount issues in the case involve questions of state law which have not yet been resolved by the Texas judiciary, and that adjudication of the state issues would either dispose of or present in a different posture the federal constitutional claims. The district court dismissed the complaint rather than staying the action, in order to remove any possible obstacles to state court jurisdiction. *See Harris County Commissioners Court v. Moore*, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); *United Services Life Ins. Co. v. Delaney*, 396 S.W.2d 855 (Tex.1965).[11] The Court made it clear, however,

> that dismissal of the action must be without prejudice, so that the federal questions can be raised again in the federal forum after the Texas courts have been given an opportunity to address the state law questions. Once the state law matters have been addressed by the Texas state courts, this Court will entertain any unresolved federal questions which Plaintiffs may choose to present.

ing the proceedings in the state courts. *American Trial Lawyers Ass'n v. New Jersey Supreme Court*, 409 U.S. 467, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973). The Supreme Court has made an exception to this procedure for cases from Texas. The Texas Supreme Court has held that it cannot grant declaratory relief under state law if a federal court retains jurisdiction over the federal claim, since its decision would merely be an advisory opinion. *United Services Life Ins. Co. v. Delaney*, 396 S.W.2d 855 (Tex.1965). Accordingly, the United States Supreme Court has endorsed the practice in Texas cases of ordering dismissal without prejudice, rather than retention of jurisdiction, in the hope that this purely formal difference will be enough to make a declaratory judgment action justifiable in the eyes of the Texas courts. *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); Wright, Miller & Cooper, 17 Federal Practice and Procedure § 4243, at 472–73 (1978).

Memorandum Opinion, Record, vol. I, at 91–92. Of course, appellants are free to submit their entire case to the state court. If the state court decides both the state and federal issues, review may be obtained in the U. S. Supreme Court; the state court decision will bar any attempt to relitigate the federal issues in federal court. Submission of federal claims to state court adjudication is not required, however, and either party may expressly reserve the right to return to federal court after the state court has acted. *See England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

## CONCLUSION

Many feel that the federal courts ought to take every case that is filed and attempt to solve all the problems of the world. We do not think Congress created the federal courts for that purpose. This case raises questions involving, *inter alia*, a state bar association, a state bar building, and a state constitution. The inclusion of federal constitutional claims in the complaint does not justify federal court involvement in purely state law issues.

■ We agree with the district court that application of the *Pullman* abstention doctrine was appropriate in this case. Appellants' lawsuit presents numerous unsettled issues of state law. A resolution of those issues by the Texas courts might significantly alter or completely moot the federal questions raised. We therefore affirm the district court's order of dismissal without prejudice.

AFFIRMED.