**Fidel B. IBARRA, Jr., and Mario Esparza, Individually and in behalf of all others similarly situated, Plaintiffs,**

v.

**TEXAS EMPLOYMENT COMMISSION and Ed Grisham, in his official capacity as Chairman of the Texas Employment Commission, et al., Defendants.**

**Civ. A. No. L–83–44–CA.**

United States District Court, E.D. Texas, Lufkin Division.

Oct. 4, 1984.

Richard S. Fischer, East Texas Legal Services, Inc., Nacogdoches, Tex., for plaintiffs.

Lawrence J. King, Asst. Atty. Gen., Austin, Tex., for defendants.

## ORDER

JUSTICE, Chief Judge.

This civil action is brought under 42 U.S.C. § 1983. Jurisdiction is based on 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Plaintiffs have moved for class certification pursuant to Rule 23, Fed.R.Civ.P. The two named plaintiffs are citizens of Mexico seeking to represent a class of all past, present, and future alien claimants of unemployment insurance benefits in the State of Texas who have had or will have their claims denied on the basis of their alienage. Specifically, the plaintiffs allege that the Texas Employment Commission ("TEC") has engrafted, onto the relevant state and federal law, its own requirement that all applicants for unemployment benefits produce documentation showing that the Immigration and Naturalization Service ("INS") has authorized the applicant to work. Plaintiffs allege that this requirement conflicts with the federal law regulating State Employment Security Administrations, and therefore must be struck down under the Supremacy Clause of the United States Constitution.

This action originally involved a broad-gauged attack on TEC procedures. The parties have informed the court, however, that the only remaining issue involves INS work authorization.

Plaintiff Fidel B. Ibarra, Jr., is a forty year old citizen of Mexico, and a lawful permanent resident of the United States. He claims that he was granted permanent resident status on September 23, 1982, and reentered the United States under this status on October 1, 1982. He alleges that on October 4, 1982, he was laid off from his job at Texas Foundries, where he had been continuously employed since 1977. That same day he allegedly went to the TEC office in Texas to request unemployment benefits, and fell into a procedural imbroglio over his eligibility for benefits, which

continued until approximately July 21, 1983. On that date, he allegedly received fourteen unemployment insurance claim checks totaling $4,033.00, as payment for claims from October 20, 1982 through June 20, 1983. Approximately one week later, the TEC reversed its position and demanded these payments back. Plaintiff Ibarra claims that the TEC's reversal is based on its erroneous interpretation of applicable federal and state law.

Plaintiff Esparza alleges that he was employed in the general business of construction in the Laredo, Texas area from November 1977 until March 1983. He further alleges that on or about June 7, 1983, he applied for unemployment benefits, and was denied on the basis of his immigration status.

This action presents a problem of statutory interpretation. The statute in question is 26 U.S.C. § 3304(a)(14), which allows aliens to receive unemployment benefits if they are "permanently residing in the United States under color of law." Both plaintiffs allege that they were permanently residing in the United States under color of law at the time they applied for their benefits, and were denied these benefits pursuant to TEC policy which conflicts with the controlling federal statute. Plaintiffs claim this status under the independent theories:

> (a) They were protected, class members under the injunction in *Silva v. Levi*, 76 C. 4268 (N.D.Ill.) and the following measures taken by the INS with respect to so-called "*Silva* class members," and as such were protected against deportation;
> (b) The INS knew where they were, knew their immigration status, and did not attempt to deport them.

(Fourth Amended Complaint, p. 9.) The proposed class is larger than that of applicants who are within the ambit of § 3304(a)(14), but are nevertheless denied benefits by the TEC. Instead, it includes *all* alien applicants, on the theory that all are subjected to an allegedly arbitrary requirement of producing documentation establishing INS work authorization in order to receive benefits. (Fourth Amended Complaint, p. 6.)

As a threshold matter, defendant has moved that this court abstain from this action until a Texas court has a chance to rule on issues of state law which, defendant asserts, are raised by plaintiffs' allegations. Defendants urge the court to apply the abstention doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), to the case. These will be considered, in turn.

*Burford*-type abstention is "appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Palmer v. Jackson*, 617 F.2d 424, 428 n. 7 (5th Cir.1980) *quoting Colorado River Water Cons. District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). In *Burford*, the Supreme Court upheld a district court's abstention in a case where exercise of jurisdiction would have meant interference with an extremely elaborate scheme of state law regulating Texas's natural gas resources. Scrutiny of plaintiff's claims and legal theories reveal that the underlying considerations of comity which controlled in the *Burford* case are of no relevance here.

The statutory scheme here in question is not peculiarly, or even primarily, state. It is a cooperative state-federal venture, through which the federal government gives financial assistance to the state unemployment compensation systems which are administered in conformity with federal law. In order to receive federal tax credits for unemployment insurance programs, states programs must be certified by the United States Secretary of Labor as being in compliance with the standards set out in the Social Security Act. 26 U.S.C. § 3304(c); *Steward Machine Co. v. Davis*, 301 U.S. 548, 590, 57 S.Ct. 883, 892, 81 L.Ed. 1279 (1936). The law here at issue is overwhelmingly federal law. The Texas

statute, art. 5221b–1(h), passed in conformity with 26 U.S.C. § 3304(a), is copied word-for-word from the federal statute. In fact, the Texas law is accompanied by two provisos to insure that Texas law will always be the exact-mirror image of federal law: art. 5221b–1(h) (Vernon Supp.1984) (Texas statute automatically adopts changes in parent federal statute); and Acts 1977 65th Leg., ch. 368, § 22, 1977 Tex.Gen.Laws. (Texas statute automatically repealed to the extent federal parent statute adjudged invalid or unconstitutional). Thus the interpretation of federal law will be dispositive of the interpretation of state law. As plaintiffs point out, this is in sharp contrast to the studied and complex system of local regulation in the *Burford* case (Memorandum in Opposition to Defendants' Motion for the Court to Abstain, p. 14). The central issue in the resolution of plaintiffs' claim is not Texas law, but the extent to which Texas practices differ from those required by the Social Security Act. Defendants' justifications for their actions—in this case the contention that their policies are required by state law—are irrelevant to this inquiry. *See O'Leary v. Social Security Bd.*, 153 F.2d 704, 707 (3rd Cir.1946) (federal unemployment insurance is a nationwide program overriding local laws which may conflict with its provisions); *Fahs v. Tree-Gold Co-op. Growers of Florida*, 166 F.2d 40 (5th Cir.1948) (local law of what constitutes "employee" irrelevant to inquiry of what constitutes "employee" under Social Security Act).

Finally, the magnitude of the potential intrusion into TEC operation which this action threatens is nowhere near that of the intervention at stake in the *Burford* case. In that case, the court noted that federal court decisions had disrupted state government to the extent that the Governor felt it necessary to declare martial law, *id.*, at 329, 63 S.Ct. at 1105. Here, the relief requested—modification of the state's working definition of which aliens are in the United States under "color of law"—will obviously not threaten the functional integrity of Texas's unemployment compensation system. According to plaintiffs, the requested relief will affect how the TEC handles .000382% of the claims it receives. (Memorandum on Abstention at p. 20.) Clearly, abstention here would further none of the policies set out in the *Burford* decision.

An alternative abstention doctrine to which defendants refer is *Pullman* abstention. "The *Pullman* case establishes two prerequisites for *Pullman* abstention: (1) there must be an unsettled issue of state law; and (2) there must be a possibility that the state law determination will moot or present in a different posture the federal constitutional question raised." *Palmer v. Jackson*, 617 F.2d 424, 428 (5th Cir.1980). Defendants argue that both requirements have been met, in that a state court determination that TEC practice does not conform to the Texas unemployment statute could possibly give plaintiff the same relief that is sought in this court. The analysis for purposes of *Pullman* abstention, however, is not concerned with the issues in a hypothetical state court suit which theoretically could be brought [1], but with the law and issues actually before *this* court.

The basis rationale of *Pullman* abstention, the avoidance of unnecessary constitutional issues, is inapplicable to this case. The issues presented here are overwhelmingly those of statutory construction. The Court of Appeals for the Fifth Circuit has considered the question of the propriety of *Pullman* abstention in a case concerning Medicaid benefits, another federal-state program created by the Social Security Act. In that case Florida Medicaid administra-

---

**1.** As plaintiffs point out, it is not at all clear that this action could be brought in state court. Tex. Rev.Civ.Stat.Ann. art. 5221b–4(i) allows dissatisfied claimants to appeal their cases in the district court of the county in which the claimant is resident. It does *not* provide for class actions or equitable relief. Therefore abstention by this court would prevent this suit, in its present form, from being brought anywhere. "Federal abstention also presupposes the availability of an alternative state forum which can afford full and fair relief." *Duncan v. Poythress*, 657 F.2d 691, 696 n. 4 (5th Cir.1981).

tion—involving Florida statutes—was challenged as being inconsistent with federal statutes. The district court refused to abstain, and the Fifth Circuit upheld this action, stating that the action presented no issues justifying either *Burford* or *Pullman* abstention. *Curtis v. Taylor*, 648 F.2d 946, 949 (1980). The *Curtis* case is dispositive of the issue of *Pullman* abstention in this action. Indeed, federal courts are the traditional forum for Supremacy Clause challenges to state administration of a federal-state Social Security Act program. *See, e.g. Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971) (AFDC); *California Department of Human Resources v. Java*, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971) (unemployment insurance); *Carleson v. Remillard*, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972) (AFDC); *Mille v. Youakim*, 440 U.S. 125, 99 S.Ct. 957, 59 L.Ed.2d 194 (1979) (AFDC). In each of these cases, the challenge to the state practice originated in a federal district court. This court is likewise a suitable forum for the plaintiffs' action.

■ With the preliminary issue of abstention resolved, the specific requirements set out in Rule 23 will be addressed. Rule 23(a) Fed.R.Civ.P., sets out the prerequisites for maintenance of a class action.

**Rule 23. Class Actions**

**(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Numerosity*

Defendants, in their answer to plaintiffs' interrogatories, have stated that in the eight calendar quarters preceding May 11; 1984, an average of 133 persons have been denied unemployment benefits on the basis of alienage, pursuant to the Texas statutory counterpart of § 3304(a)(14). Thus more than 500 individuals per year have aliens as class members, clearly enough to fulfill Rule 23(a)'s requirement of numerosity. *See generally,* J. Moore, *Moore's Federal Practice*, Vol. 3B § 23.05[1]. The class is dispersed throughout Texas, which makes joinder impracticable, *see Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir.1980). Finally, the proposed class contains prospective members, who may be harmed by defendants' policies in the future. By definition, the identities of these members are unknown. "[J]oinder of unknown individuals is certainly impracticable." *Jack v. American Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir.1974), quoted in *Phillips v. Joint Legislative Committee*, 637 F.2d 1014, 1022 (5th Cir.1981).

*Typicality and Commonality*

The central issue in this case is the proper meaning of § 3304(a)(14), and whether defendants' policies violate this statute. Both parties have submitted briefs citing case law, legislative history, and administrative interpretation in support of their interpretation of the meaning of this statute. Plaintiff has pointed out seeming inconsistencies in the United States Department of Labor's interpretation of § 3304(a)(14), and has referred the court to two other statutes under the Social Security Act which employ the same language: 42 U.S.C. § 1382c(a)(1)(B)(ii) (Supplemental Security Income), and 42 U.S.C. § 602(a)(33) (Aid to Families with Dependent Children). Since these statutes have an identical purpose and subject matter—restricting the eligibility of aliens for benefits under the Social Security Act—it seems that they should be construed *in pari materia. See generally, United States v. Stewart*, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40 (1940); *Wong Kam Wo v. Dulles*, 236 F.2d 622 (9th Cir.1956); *Brown v. Gilligan, Will and Co.*, 287 F.Supp. 766 (1968). Statutes that are *in pari materia* are "to be taken together, as if they were one law."

*United States v. Freeman,* 3 How. 556, 564, 11 L.Ed. 724 (1845), *quoted in United States v. Stewart, id.* 311 U.S. at 64, 61 S.Ct. 105. Of particular interest is the agency interpretation of the earlier of these enactments, 42 U.S.C. § 1382c(a)(1)(B)(ii), which is contained in regulations promulgated by the Department of Health and Human Services, 20 C.F.R. § 416.1618.[2] This working definition of "permanent resident under color of law" recommends itself as practicable, and its application to the identical language here would seem to promote consistency in the administration of Social Security Act programs. It would be inappropriate, however, to convert this motion for class certification into a motion for summary judgment, *Garcia v. Gloor, supra.* No attempt will be made, therefore, to construe the statute at this point in such a way as to define the class of those "permanently residing in the United States under color of law".

The parties agree that the defendants interpret this phrase to mean "in possession of INS work authorization." Both plaintiffs were denied benefits on this ba-sis, as is every alien in Texas who is unable to produce such authorization. All class members have a common interest in striking down this practice, and none can set about showing the basis for their claim of "permanent residence under color of law", if this threshold requirement of the TEC is upheld as being consistent with federal law. The issue of the propriety of defendants' conduct supplies the required typicality and commonality to make this action maintainable as a class action. Pending a final determination of the meaning of § 3304(a)(14), therefore, a class of all those aliens denied benefits because of an inability to produce INS work authorization will be conditionally certified pursuant to Fed. R.Civ.P. 23(c)(1).

### Fair and Adequate Representation

Defendants have not suggested that there is any antagonism within the proposed class, or that plaintiffs will not vigorously pursue their claims. The affidavits submitted by counsel indicate that the plaintiffs will receive skilled and qualified representation in doing so.

---

2. **§ 416.1618 How to prove you are perma-nently residing in the United States under color of law.**

(a) What you should give us. You can prove you are permanently residing in the United States under color of law by giving us—

(1) An Arrival-Departure Record (Immigration and Naturalization Service (INS) Form I–94) endorsed "Refugee Conditional Entry" and showing the section of the Immigration and Nationality Act under which you were admitted.

(2) An Arrival-Departure Record (INS Form I–94) endorsed to show that you are paroled for an indefinite period under section 212(d)(5) of the Immigration and Nationality Act;

(3) An Arrival-Departure Record (INS Form I–94) endorsed "Voluntary Departure Grant-ed-Employment Authorized" (this form and an INS letter are given to persons affected by a United States District Court order issued March 10, 1977);

(4) An Arrival-Departure Record (INS Form I–94) endorsed "Admitted as a refugee pursu-ant to section 207 of the Immigration and Naturalization Act";

(5) An Order of Supervision (INS Form I220B) which shows you have been granted an indefinite stay of deportation.

(6) Any other letter or document from the Immigration and Naturalization Service showing that you have been granted either an indefinite voluntary departure or an indefinite stay of deportation; or

(7) Proof of your presence in the United States before June 30, 1948, and proof of your continuous residence thereafter.

(b) What to do if you cannot give us the information listed in paragraph (a). If you cannot give us any of the documents listed in paragraph (a), we may find you to be perma-nently residing in the United States under color of law if you—

(1) Explain why you cannot give us any of the documents; and

(2) Give us any information you have which shows or results in proof that you are permanently residing in the United States under color of law. We will contact the Immi-gration and Naturalization Service to help es-tablish that you meet this color of law rule.

(c) What "United States" means. We use the term "United States" in this section to mean the 50 States, the District of Columbia, and the Northern Mariana Islands.

*Maintainability*

This action is clearly maintainable under subdivision (b)(2) of Rule 23. "This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, setting the legality of the behavior with respect to the class as a whole, is appropriate." Notes of Advisory Committee on Rules, Rule 23 Fed. R.Civ.P. Here, the defendant is alleged to have refused benefits to a class entitled to them, on the single ground that class members did not produce evidence of INS work authorization on demand. Plaintiffs' seek an end to this practice, and relief bringing Texas's practice into accord with the federal statute. This is the type of broad remedial action for which subdivision (b)(2) was designed. *Penson v. Terminal Transport Co.*, 634 F.2d 989 (5th Cir.1981). On the basis of the foregoing, it is

ORDERED that plaintiffs' motion for certification of a plaintiff class is, hereby, GRANTED; it is further

ORDERED that this action shall proceed as a class action pursuant to Rule 23(b)(2), Fed.R.Civ.P.; it is further

ORDERED that the plaintiff class conditionally consist of all past, present, and future individuals who have been denied unemployment benefits in Texas because of their inability to produce INS work authorization.

SIGNED and ENTERED this 4th day of October, 1984.