Albert H. CARTER, Petitioner-Appellee,

v.

W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellant.

No. 80–1981.

United States Court of Appeals,
Fifth Circuit.

June 1, 1982.

Douglas M. Becker, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

Arnold Anderson Vickery, Houston, Tex., for petitioner-appellee.

Before POLITZ and RANDALL, Circuit Judges, and PARKER *, District Judge.

RANDALL, Circuit Judge:

This case involves two questions: (1) whether petitioner Albert H. Carter met the requirements of the exhaustion doctrine before bringing the present federal habeas corpus action and (2) whether his 1974 retrial and conviction for embezzlement violated the double jeopardy clause. The district court below held that state remedies had been exhausted, found for Carter on his substantive claims, and ordered him released. The State of Texas has appealed this decision. We affirm. Our view is that Carter has no available and effective state remedy in the state courts and has met the requirements of exhaustion doctrine. We also agree with the district court's analysis of the double jeopardy issue, which in several ways anticipated our own later decision

---

* Chief Judge of the Middle District of Louisiana, sitting by designation.

in *Bullard v. Estelle*, 665 F.2d 1347 (5th Cir. 1982).

## I. The History of this Litigation.

Carter was convicted of perjury in Cause No. 2158 in the Middle District of Georgia in 1962. In 1969, he was convicted of his second felony offense, embezzlement, in the 174th District Court of Harris County, Texas, in Cause No. 137,784. For the 1969 conviction, Carter received a sentence of seven years. During his incarceration for the 1969 conviction, he was indicted and convicted in still another case, Cause No. 178,126, again for embezzlement. This third conviction occurred on September 18, 1972, and on October 24, 1972, he was sentenced to life imprisonment. The 1962 and 1969 convictions were used to enhance Carter's sentence to life, and the life sentence was ordered to run consecutively to his seven-year sentence for the 1969 conviction.

Carter appealed his 1972 conviction to the Texas Court of Criminal Appeals. The Appeals Court reversed his conviction, finding that there was insufficient evidence to establish ownership and control of the money the indictment had charged Carter with embezzling. The case was remanded to the trial court and Carter filed a "Special Plea" claiming that double jeopardy barred his retrial. The trial court did not specifically pass on the "Special Plea", but Carter was subsequently retried and convicted in 1974 on an identical embezzlement charge. Once again, the 1962 and 1969 felony convictions were used to enhance his sentence to life, this sentence to be served consecutively to the seven year sentence he was already serving for the 1969 conviction.

Carter did not appeal his 1974 conviction. On December 3, 1974, he filed a habeas petition, Cause No. 74-H-1603, attacking the conviction in federal court. After four different amendments by Carter, this petition eventually raised claims attacking the 1974, 1969, and 1962 convictions.[1]

---

1. Cause No. 74-H-1603 has an extremely complicated history which we have not discussed in the above text, as the facts essential to the legal issues before us are complicated enough.

In 1978, the Supreme Court decided *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), and held that the double jeopardy clause precludes a second trial of a defendant when a prior conviction has been reversed by an appellate court for insufficiency of the evidence. This was substantially the same theory which Carter had argued four years previously in his 1974 "Special Plea" requesting that he not be retried for embezzlement. Thus, on July 19, 1978, a month after *Burks* and *Greene* were decided, Carter filed a fifth amendment to his habeas petition in No. 74–H–1603, alleging for the first time in his various habeas petitions that the double jeopardy clause invalidated his 1974 conviction.

The State of Texas moved to dismiss No. 74–H–1603, alleging Carter's failure to exhaust state remedies. The State argued that because this newest theory was never raised before in a state habeas petition or on appeal of the 1974 conviction, Carter had not exhausted the remedies available to him. Relying on this circuit's en banc decision in *Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir. 1978), the State argued that No. 74–H–1603 was at best a "mixed" petition consisting of both exhausted and unexhausted claims, and, under *Galtieri*, the entire petition should be dismissed without prejudice. United States Magistrate Ronald J. Blask, in a memorandum and recommendation signed August 18, 1978, recommended that the motion to dismiss be granted. On August 21, 1978, District Judge Finis E. Cowan adopted the recommendation and dismissed No. 74–H–1603 for failure to exhaust state remedies.

At this point events took a complicated and unusual turn. On August 31, 1978, Carter filed a motion for reconsideration of the court's decision, requesting that the dismissal order be vacated. Carter argued that his petition in No. 74–H–1603 attacked both his 1969 embezzlement conviction and his 1974 embezzlement conviction. He claimed that he had fully exhausted his state remedies as to the former and that his

---

A brief description, however, will give the reader some idea of the procedural skirmishing on both sides and the considerable judicial resources which have been expended in the process. No. 74–H–1603 was originally styled *Carter v. Heard*; later custody of Carter was transferred from the Harris County Jail to the Texas State Correctional System, and W. J. Estelle was substituted as Respondent. At this point, there were two habeas petitions styled *Carter v. Estelle*, the first one, No. 73–H–732, attacking the 1969 conviction, and the second, No. 74–H–1603, attacking the 1974 conviction. The attack on the 1969 conviction in No. 73–H–732 included an attack on the 1962 conviction used to enhance the 1969 conviction. A third *Carter v. Estelle*, Cause No. 76–H–19, sought restoration of lost prison "good time" credits. At one point, there were a total of eight habeas petitions filed by Carter against respondent Estelle pending in the federal courts. *See Carter v. Telectron, Inc.*, 452 F.Supp. 944 (S.D.Tex. 1977).

Carter then began to file a series of amended petitions in No. 74–H–1603. On March 24, 1975, he filed a Motion for Leave to File a Third Amended Petition. This motion restated all of the claims asserted in the original petition and incorporated all of the grounds for attacking the 1969 conviction which were alleged in No. 73–H–732. Contemporaneous with the filing of the motion, Carter voluntarily dismissed No. 73–H–732. Apparently Carter was seeking to litigate all his claims against both the 1969 and 1974 convictions in one federal habeas proceeding.

At this point, the State of Texas filed a series of seven motions over a period of three years repeatedly requesting that No. 74–H–1603 be dismissed for failure to exhaust state remedies. The State of Texas argued that no state remedies had been exhausted in the 1974 conviction (No. 178,126), and that Carter had filed only one habeas petition attacking the 1969 conviction (No. 137,784). This petition, No. 137,784–A, did not plead the substantive grounds relied on in the federal attack on the 1969 conviction; rather, it only raised a jail time credit question.

On November 22, 1976, District Judge Woodrow Seals issued an order in No. 74–H–1603. The District Judge stated that, as it had been "informed by the parties in open court that no Texas Court had yet addressed petitioner's contentions under the provisions of Section 11.07, Texas Code of Criminal Procedure [the Texas habeas statute]," the proceedings in 74–H–1603 would be stayed until Carter had made a good faith effort to exhaust state remedies. This stay did not include the several attacks on the 1962 conviction also present in No. 74–H–1603, but this fact had no effect on subsequent proceedings. See, n.5, *infra.* On October 13, 1977, No. 74–H–1603 was transferred to the docket of Judge Finis E. Cowan.

double jeopardy claim under *Burks, supra,* and *Greene, supra,* applied only to the latter. He argued, moreover, that dismissal of No. 74–H–1603 in its entirety would prevent him from obtaining any federal habeas corpus review of his 1969 conviction. Carter had filed No. 74–H–1603 on December 3, 1974, some five months before he had fully discharged the seven-year sentence associated with the 1969 conviction. Because of that, federal habeas corpus jurisdiction over No. 74–H–1603 continued to exist under *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), even after May 17, 1975, when service of the seven-year sentence was completed. It would not, however, Carter contended, extend to any federal habeas corpus action filed after May 17, 1975, even if that action had originally been filed in federal court prior to that date and had been dismissed for failure to exhaust state remedies. If justice was to be done, Carter insisted, No. 74–H–1603 could not be dismissed in its entirety.

The matter was once again referred to Magistrate Blask, who issued a second memorandum and recommendation. In this second memorandum, dated January 9, 1979, the magistrate characterized No. 74–H–1603 as a mixed petition with the 1969 claims exhausted and the 1974 claims only partially exhausted. The magistrate then discussed the application of the exhaustion requirement laid out in *Galtieri v. Wainwright, supra,* to petitioner Carter's case:

> The *Galtieri* rule is premised upon the principle that "requiring exhaustion of all claims does not 'bar the federal courthouse door' to any petitioner." *Galtieri v. Wainwright, supra,* at 355. Carter's seven year challenge will, in my judgment, be barred if, as the respondent suggests, the entire petition should be dismissed. Furthermore, . . . this petition raises the problem of the appropriate resolution to be made where two distinct convictions arising in two separate state courts in

this County are challenged in the same action in federal court. . . [I]n order to avoid the harsh consequences engendered by dismissal of petitioner's viable seven year challenge and yet satisfy the demands of the exhaustion doctrine as to the issues raised in the life sentence case, it is Recommended that the Court's Order and Final Judgment dated August 21, 1978, be modified as follows:

1. This cause of action be severed and designated as C.A. No. 74–H–1603–A, incorporating petitioner's independent challenge to his 1969 seven year embezzlement conviction in Cause No. 137,784 in the 174th Judicial District Court of Harris County, Texas, and C.A. No. 74–H–1603–B, encompassing petitioner's independent challenge to his 1974 life sentence imposed in Cause No. 178,126 in the 185th Judicial District Court of Harris County, Texas;

2. As the Court has previously adopted the Memorandum and Recommendation of the undersigned that the life sentence (C.A. No. 74–H–1603–B) contains both exhausted and unexhausted claims, said action be dismissed, without prejudice, for failure to exhaust all available state remedies as required by law, and

3. Petitioner's seven year challenge (C.A. No. 74–H–1603–A) be retained on the Court's docket awaiting final disposition of the claims raised therein.

On February 8, 1979, Judge Cowan followed this recommendation, adopting Magistrate Blask's Memorandum and Recommendation and splitting No. 74–H–1603 into two actions.

Carter did not wait for the February 8 severance by the district court. Instead, after the August 21 order dismissing the case, he filed a second state habeas challenge to his 1974 conviction in state court, No. 178,126–B, on September 21, 1978, in the 185th District Court of Harris County, Texas.[2] The district court dismissed, find-

---

2. The first habeas challenge, No. 178,126–A, had alleged many of the same claims as No. 74–H–1603. It was dismissed by the Texas Court of Criminal Appeals on February 2, 1977,

because No. 74–H–1603 was still pending in federal court. As we discuss more fully later on, Texas law prevents the Texas courts from passing on claims in a habeas case where an

ing it had no jurisdiction. On January 10, 1979, the Texas Court of Criminal Appeals dismissed, explaining:

> In this Court, Carter argues that the order entered by the trial court was incorrect; and, that because of a recent amendment to Article 11.07, Vernon's Ann.C.C.P., the trial court erroneously concluded that it did not have jurisdiction of this proceeding. We need not reach Carter's contentions, however, because he admits under oath that he is presently challenging the validity of his conviction in Cause Number 178,126, by federal habeas corpus proceedings. Out of deference to the federal courts, we will not exercise our habeas corpus jurisdiction until Carter's attack on the validity of his conviction in Cause Number 178,126, has been finally concluded in the federal courts.
>
> Therefore, the instant proceeding is dismissed without prejudice to Carter's reapplying to the trial court for habeas corpus relief pursuant to Article 11.07, supra, when his challenge to the validity of his conviction in Cause No. 178,126 has been finally concluded in the federal courts.

On March 9, one month after Judge Cowan ordered No. 74–H–1603 severed, Carter brought a third state habeas corpus action in Harris County District Court. In this petition, No. 178–126–C, Carter alleged that his 1974 conviction was barred by double jeopardy, and reasserted his other claims in No. 178–126–B. He requested that the court proceed to the double jeopardy claim first, since it would not require an evidentiary hearing. He included a copy of Judge Cowan's Order of February 8, 1979, and gave an explanation of how the district court had dealt with No. 74–H–1603. This third state habeas petition was eventually dismissed by the Texas Court of Criminal Appeals on November 14, 1979. The Court of Criminal Appeals explained its reasons as follows:

> application for the same relief is pending in the federal courts. *Ex parte Green*, 548 S.W.2d

In his present application, petitioner admits that he has an application for writ of habeas corpus pending in the United States District Court for the Southern District of Texas, Houston Division, in an action styled *Albert H. Carter v. W. J. Estelle, Jr.*, Civil Action No. 74–H–1603. In *Ex parte Green*, 548 S.W.2d 914 (Tex. Cr.App.1977), this Court stated: "A petitioner must decide which form [sic] he will proceed in because this Court will not and the trial court in this State should not consider a petitioner's application so long as the federal courts retain jurisdiction of the same matter. *Ex parte Powers*, 487 S.W.2d 101 (Tex.Cr.App.1972)." See also *Ex parte McNeil*, 588 S.W.2d 592 (Tex.Cr.App.1979).

Petitioner's application for writ of habeas corpus is dismissed without prejudice to his right to reapply to the trial court for habeas corpus relief pursuant to Article 11.07, supra, when his challenge to the validity of his conviction has been finally concluded in the federal courts.

Carter moved for reconsideration of the dismissal order, explaining in a letter that his claims in the present state habeas proceeding dealt with the 1974 conviction, not with the 1969 conviction, which was the subject of No. 74–H–1603–A:

> This Court dismissed this action without prejudice solely because of a gross misunderstanding by this Court of a single fact. In the second paragraph of [its] dismissal order, this Court stated that "petitioner admits" that he has a federal habeas corpus action pending. That much is true, but the pending federal action (No. 74–H–1603–[A]) does *not* attack petitioner's *present* conviction (i.e., Cause No. 178,126 in the state District Court). Rather, the federal habeas action attacks *only* Petitioner's prior convictions (including a federal conviction and three misdemeanor convictions) which resulted in penal sentences which Petitioner fully discharged many years ago—and as to which the

914 (Tex.Cr.App.1977).

federal court has formally determined that Petitioner has fully exhausted state remedies.

On January 14, 1980, the Texas Court of Criminal Appeals denied the Motion for Reconsideration without written order.

Carter now returned to the federal courts and filed the present action, No. H–80–433, on February 29, 1980, once again attacking his 1974 conviction. Carter now alleged as his sole ground for relief his double jeopardy claim; he stated in his petition that he had "more than 30 additional grounds for relief" but that he would not assert them to avoid "unduly burdening the Court."

The State of Texas once again moved to dismiss for failure to exhaust state remedies. A hearing was held before Judge Gabrielle McDonald on July 13, 1980. At the conclusion of argument, the district court orally denied the State's motion for dismissal, granted summary judgment to Carter, and ordered him released immediately.

On July 17, 1980, the court issued an opinion explaining the reason for its decision. It argued that the Texas Court's refusal to hear Carter's petition should not put Carter to the unpleasant choice of dismissing the federal action in No. 74–H–1603–A and losing the ability to attack his 1969 conviction forever, or instead remaining incarcerated until the federal courts heard No. 74–H–1603–A and Carter could then refile in state court. The court held that the actions of the Texas Court of Criminal Appeals were sufficient for exhaustion purposes. It relied in part on its assessment that the Texas courts had dismissed the petition due to a misunderstanding of the facts of the case:

> [T]he failure of the Texas Court of Criminal Appeals to exercise habeas corpus jurisdiction over the present claim is, almost without question, attributable to a factual misunderstanding, a misunderstanding which the petitioner has made every effort to correct. The cases which the Texas Court of Criminal Appeals relied upon in refusing to entertain petitioner Carter's application for writ of habeas corpus

firmly establish that the state courts will not accept habeas corpus jurisdiction of a case if the same case is being litigated in federal court... That was not the case with the application that petitioner Carter had pending in federal court. As Magistrate Blask and Judge Cowan correctly determined, the petition before the Texas Court of Criminal Appeals and the petition pending in federal court involved, "two distinct convictions arising in two separate state courts." ... The Court of Criminal Appeals, it can be seen, failed to understand the facts. That is unfortunate, to say the least, but it is not the petitioner's fault.... It cannot, moreover, prevent this Court from reviewing the petitioner's claim. *See Smith v. Digmon,* 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978); *Carr v. Alabama,* 586 F.2d 462 (5th Cir. 1978).

499 F.Supp. 777 at 781–82.

The District Court considered but rejected the possibility that the Texas Courts were applying a rule of justiciability or comity requiring prior "exhaustion" of federal remedies which might conceivably moot or otherwise affect the state habeas case.

> [I]t is conceivable that the Texas Court of Criminal Appeals did not misunderstand the facts in regard to the petitioner's habeas corpus cases, but, instead, by refusing to entertain the petitioner's claim, intended to adopt a new rule: that state habeas corpus jurisdiction would not extend to a challenge to one conviction when the petitioner had a challenge to another conviction pending in federal court, at least when the latter conviction was used to enhance the sentence given for the former conviction. Such a rule, would, however, be a substantial departure from the current rule followed by the Texas courts... It would, moreover, severely impair the flow of multiple offenders' habeas corpus cases through the state and federal systems. In order to obtain state habeas corpus review of convictions obtained after the original filing of a habeas corpus action in federal court,

the petitioner would, presumably, repeatedly have to dismiss and refile his federal habeas corpus case. The delay and disruption would be staggering. Finally, as petitioner Carter's case aptly demonstrates, such a rule would, if respected by the federal courts, "bar the federal courthouse door," *Galtieri v. Wainwright, supra,* at 355, to many claims. *This Court cannot believe that the Texas Court of Criminal Appeals would have adopted such a rule without explicitly saying so. It need not decide, therefore, whether, if such a rule had been adopted, dismissal for failure to exhaust state remedies would be required.* 499 F.Supp. at 782–83 (emphasis added).

The State of Texas filed a timely appeal to this court. However, in a still further procedural wrinkle on this case, the State sought and obtained a stay in the proceedings in No. 74–H–1603–A pending the outcome of the present appeal.[3]

On appeal we are presented with two questions: whether Carter's double jeopardy claim was properly exhausted and thus properly before the district court, and if so, whether the district court's assessment of Carter's double jeopardy claim was correct as a matter of law. The latter is more or less a straightforward question involving application of *Burks* and *Greene,* as we discuss *infra.* The exhaustion issue presents a threshold question of some difficulty, however. This problem is complicated by the procedural tangles which have marked this litigation from its inception. It is further complicated by the summary and ambiguous actions of the Texas Court of Criminal Appeals. Our analysis of the exhaustion issue will proceed in five stages. First we discuss the doctrinal history of the

Texas rule of habeas abstention used by the Court of Criminal Appeals in this case. Second, we examine the Texas scheme's adequacy and effectiveness for the prompt resolution of habeas claims in general and the claim involved in this case in particular. Third, we discuss the exhaustion requirement and its theoretical underpinnings. Fourth, we demonstrate how the judicially developed exceptions to the rule of exhaustion all derive from the same theoretical framework as the rule itself. Fifth, we apply that framework to the Texas rule as we understand it to operate in this case.

## II. The Development of the Texas Rule of Habeas Abstention.

The District Court based its decision upon the assumption that the Texas Court of Criminal Appeals had misunderstood the severance procedure instituted by Judge Cowan. The district court held that the Court of Criminal Appeals mistakenly thought that No. 74–H–1603–A, which remained in the federal courts, contained a challenge to the 1974 conviction because No. 74–H–1603 had contained such a challenge. We must begin our analysis, however, with a rejection of the district court's assumption. The record shows that the Court of Criminal Appeals was provided with a complete explanation of Judge Cowan's decision by Carter and that Judge Cowan's order itself was submitted to the Court of Criminal Appeals along with Carter's habeas petition in No. 178,126–C. Thus, we cannot assume that the Court of Criminal Appeals was ignorant of or misunderstood the relevant circumstances of the case.

Rather, we must take the Court of Criminal Appeals decisions in No. 178,126–B and

---

**3.** The State of Texas argued that should this court decide that state remedies were not exhausted with respect to the double jeopardy claim, Carter would have to dismiss No. 74–H–1603–A in order to proceed in state court. To avoid waste of judicial resources in No. 74–H–1603–A, the court was asked to stay its hand to see whether Carter would in fact dismiss. This argument neglected the fact that swift consideration of No. 74–H–1603–A might also moot the issues in this case; however, the stay was

granted and we must now attempt to clear up the resultant traffic jam.

The State of Texas has now argued before this court that we should reverse the district court for refusing to stay the present case until No. 74–H–1603–A is litigated. Texas has already gotten one stay in No. 74–H–1603–A; we see no reason to stay this litigation as well. Rather, we think it is time for someone to begin the process of resolving this enormously complicated situation.

No. 178,126–C at face value. These opinions, the relevant language of which appears above, dismissed Carter's habeas petitions on the basis of three Texas cases, *Ex parte Powers*, 487 S.W.2d 101 (Tex.Cr.App. 1972), *Ex parte Green*, 548 S.W.2d 914 (Tex. Cr.App.1977), and *Ex parte McNeil*, 588 S.W.2d 592 (Tex.Cr.App.1979). These cases developed a doctrine of state habeas abstention which we now examine in detail.

■ In *Ex parte Powers*, the Court of Criminal Appeals announced what appeared to be a new rule of judicial deference to ongoing federal criminal proceedings:

> This application for writ of habeas corpus was dismissed on May 3, 1972, for the reason that both the United States Court of Appeals for the Fifth Circuit and the United States District Court for the Western District of Texas had retained jurisdiction of this case, holding it in abeyance in habeas corpus matters pending before them. This court declined to consider the petitioner's application so long as those courts retained jurisdiction. Appropriate orders have now been entered by both the United States Court of Appeals for the Fifth Circuit and the United States District Court for the Western District of Texas, dismissing all matters pertaining to this case.
>
> We will now consider the application for writ of habeas corpus.

487 S.W.2d at 102. This rule was utilized again in *Ex parte Green*. In that case, the petitioner had filed a writ of habeas corpus in state district court, had it dismissed, and then filed in federal district court. The federal court dismissed, and an appeal was taken to the Fifth Circuit. While the appeal was pending, there was an intervening Supreme Court decision, *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), which was relevant to the petitioner's claim. The Fifth Circuit remanded in the light of *Menna*, and the district court dismissed the petition without prejudice in order to allow the state courts an opportunity to address the question first. At this point, the petitioner filed an appeal to the Fifth Circuit and filed a new habeas petition in a state district court. Relying on *Ex parte Powers*, the Court of Criminal Appeals held that consideration by the state courts should be withheld until the federal courts relinquished jurisdiction:

> Further delay was caused by prosecuting an appeal to the Fifth Circuit from the federal court order at the same time Petitioner proceeded on his application for writ of habeas corpus in the courts of this State. A petitioner must decide which forum he will proceed in, because this Court will not, and a trial court in this State should not, consider a petitioner's application so long as the federal courts retain jurisdiction of the same matter. *Ex parte Powers*, 487 S.W.2d 101 (Tex.Cr. App.1972). The Fifth Circuit Court of Appeals has now dismissed Petitioner's appeal from the federal district court order; therefore, we will now consider Petitioner's application on its merits.

548 S.W.2d at 916. The language of *Powers* and *Green* had not clearly indicated whether the proper procedure was for the state court merely to hold the petition in abeyance pending the outcome of federal proceedings, or to dismiss it outright. This ambiguity was resolved in *Ex parte McNeil*:

> The petitioner now has pending in the United States District Court for the Southern District of Texas in Civil Action No. H–79–393 styled John Alvin McNeil, Petitioner v. W. J. Estelle, Jr., Director, Texas Department of Corrections, Respondent, an application for writ of habeas corpus seeking the same relief that he seeks here. Since that court has entertained and retained jurisdiction of the matter we dismiss this application as we did in *Ex parte Powers*, 487 S.W.2d 101 (Tex.Cr.App.1972) and *Ex parte Green*, 548 S.W.2d 914 (Tex.Cr.App.1977). See also *Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir. 1978).

588 S.W.2d at 592–93. Together, *Powers, Green*, and *McNeil* stand for the proposition that whenever a petitioner seeks a writ of habeas corpus in state court, if the state court determines that a federal habeas pro-

ceeding concerning the "same matter" or seeking the same relief is presently pending, the state court may not consider the merits of the petition but must dismiss it.

The question arises whether this rule of state habeas abstention is grounded upon notions of federal-state comity or on the underlying jurisdiction of the Texas courts. The Texas courts have construed their jurisdictional powers very narrowly in other circumstances, and have, in certain civil matters, refused on state constitutional grounds to decide the merits of a case while a federal court retains jurisdiction over the same case. *United Services Life Ins. Co. v. Delaney,* 396 S.W.2d 855 (Tex.1965); *see Moore v. El Paso County,* 660 F.2d 586 (5th Cir. 1981); *Palmer v. Jackson,* 617 F.2d 424 (5th Cir. 1980); *Romero v. Coldwell,* 455 F.2d 1163 (5th Cir. 1972); *Barrett v. Atlantic Richfield Co.,* 444 F.2d 38 (5th Cir. 1971) (Texas courts would not decide state law issues in *Pullman*-type situation while federal court retained jurisdiction). One panel of this court has intimated that the rule of *Ex parte Green* has a similar origin in the Texas courts' restricted interpretation of their own constitutionally granted jurisdiction. *Red Bluff Drive-In, Inc. v. Vance,* 648 F.2d 1020, 1025 n.4 (5th Cir. 1981).

However, the language actually used by the Court of Criminal Appeals in its cases dealing with habeas abstention suggests that the doctrine is based on comity and not lack of jurisdictional power. The three reported Texas cases speak of the Texas courts as "declin[ing] to consider the petitioner's application," *Ex parte Powers, supra,* at 102, and hold that the Court of Criminal Appeals "will not, and a trial court in this State should not" consider applications when federal proceedings are pending. *Ex parte Green, supra,* at 916. Moreover, the Court of Criminal Appeals, in dismissing Carter's petition in No. 178,126–B, had justified its action "out of deference to the federal courts."

A further reason to suspect that the abstention is based on comity and not jurisdiction is that it has only been applied so far in the context of state habeas petitions. If the practice were based upon a true lack of jurisdiction, then a criminal defendant directly appealing a conviction who attacked prior convictions used for enhancement would equally be forced to forego his appeal until his federal habeas attacks on those prior convictions were dismissed or fully litigated. Such a rule would obviously have deleterious effects on a criminal defendant's right of appeal in Texas, and we have found no Texas case where the abstention rule is invoked under these circumstances. Hence we conclude that the rule is one of comity specifically fashioned for use in the habeas context, and not a rule stemming from an inherent lack of jurisdictional power.[4]

4. The completely different approach which the federal courts take with respect to the problem of concurrent state and federal habeas proceedings is well illustrated by our decision in *Escobedo v. Estelle,* 650 F.2d 70, *modified on petition for rehearing,* 655 F.2d 613 (5th Cir. 1981). In *Escobedo,* the petitioner exhausted his state habeas remedies with respect to an attack on his 1970 felony theft conviction, and then brought a federal habeas petition alleging the same claim as his state petition. However, in the meantime, the petitioner had been convicted of burglary in 1977 and the 1970 conviction had been used for enhancement purposes. The petitioner appealed his 1977 conviction in the state courts, raising once again his challenge to the 1970 conviction used for enhancement; this appeal was pending when the petitioner brought his federal habeas action attacking the 1970 conviction on the same grounds.

The magistrate to whom the federal habeas petition was referred acknowledged that the attack on the 1970 conviction had already been made by the petitioner and rejected by the Texas courts through the Texas habeas procedures. However, the magistrate recommended that the interests of comity and sound judicial administration would be served if the federal courts abstained from consideration of the petitioner's claim as the pending state appeal of the 1977 conviction raised the same issue. The district court followed this recommendation and dismissed without prejudice.

On appeal, a panel of this circuit rejected this view. It held that as long as the petitioner's claim had been fairly presented once to the state courts, the exhaustion requirement was satisfied. The fact that the state court was again considering the same claim simultaneously with the federal courts did not rob the latter of the ability to pass upon the claim. 650 F.2d at 74. The panel initially reversed the district court, but, on rehearing, affirmed the

What had not been made clear by the three reported Texas decisions is exactly what constitutes the "same matter" pending in federal and state courts which would require state abstention. The brief opinions given by the Court of Criminal Appeals in Nos. 178,126–B and C clarify the meaning of that term to some extent; but in so doing they also broadly expand the scope of the habeas abstention doctrine. It is the application of this expanded doctrine for the first time to Carter's petitions which creates the procedural problems in this case.

We can understand the gloss which the Texas courts have given to the term "same matter" by a careful examination of Carter's habeas petitions in state and federal courts. After Judge Cowan had initially dismissed No. 74–H–1603, but while the motion for reconsideration was still pending, Carter had filed habeas petition No. 178,-126–B in state court, attacking his 1974 conviction. The Court of Criminal Appeals, noting that an attack on the 1974 conviction was still pending in federal court, dismissed and stated that "[o]ut of deference to the federal courts we will not exercise our habeas corpus jurisdiction until Carter's attack on the validity of his 1974 conviction in Cause No. 178,126, has been finally concluded in the federal courts." Given that 74–H–1603 contained an attack on the 1974 conviction, and sought the same relief as the state petition, this decision seems in accord with the rule of *Powers, Green,* and *McNeil.*

However, after the severance of the federal petition into 74–H–1603–A and B, and the dismissal of the latter, Carter filed his third state habeas challenge to the 1974 conviction, No. 178,126–C. The first ground for relief asserted in this petition and the one which Carter stressed (as it did not require an evidentiary hearing), was double jeopardy. But No. 178,126–C contained considerably more in terms of substantive claims:

> In addition to the double jeopardy ground for relief, Petitioner hereby asserts all grounds for relief set out on pp. A–1 to A–5, inclusive, of the Appendix A to his First Supplemental Petition for Writ of Habeas Corpus, filed on September 25, 1978 in this cause (as No. 178,126–B), which are herein incorporated by reference.

Pages A–1 through A–5 of the First Supplemental Petition to No. 178,126–B list twenty-six different challenges to the 1974 conviction. Of particular importance, however, is Ground for Relief III on page A–1:

> III. Petitioner's punishment was enhanced under Texas Penal Code Article 63 (1925) by evidence of a prior state embezzlement conviction (No. 137,784, 174th District Court of Harris County, Texas) and of a prior federal perjury conviction (No. 2158, United States District Court, Middle District of Georgia, Albany Division), which convictions are constitutionally invalid for the reasons hereinafter described. See pp. B–1—B–6, *post.*

Pages B–1 through B–6, in turn, list eleven major challenges to the 1969 conviction. One of these is the constitutional invalidity of the 1962 conviction, for which nine separate reasons are given.

In sum, Carter's habeas petition in No. 178,126–C contains constitutional challenges to his 1974, 1969, and 1962 convictions. Although after severance, No. 74–H–1603–A no longer challenged the 1974 conviction, it did still attack the 1969 and 1962 convictions.[5] Thus, the federal court action challenged the 1969 and 1962 convictions while

---

dismissal of the petition on the grounds that the custody requirements of § 2254 had not been met. *Escobedo v. Estelle,* 655 F.2d 613 (5th Cir. 1981).

**5.** Although No. 74–H–1603–A was primarily a challenge to the 1969 conviction, it included attacks on the 1962 conviction as well. Judge Seals had stayed consideration of all claims except those challenging the 1962 conviction

pending Carter's attempt to exhaust state remedies. After the severance, which disposed of the challenges to the 1974 conviction, what remained in No. 74–H–1603–A were attacks on the 1969 conviction, which had previously been stayed, and attacks on the 1962 conviction, which had not been stayed but upon which no further proceedings had taken place.

the state court action challenged these two convictions plus the 1974 conviction. Under these circumstances, the Texas Court of Criminal Appeals dismissed Carter's habeas petition, holding that the "same matters" were pending in federal and state court.

Given this action by the Texas Court of Criminal Appeals, we conclude that by "same matter" is meant "same conviction," for in both state and federal court Carter was attacking his 1969 and 1962 convictions.[6]

An alternative hypothesis, that "same matter" means instead the same substantive claim against a particular conviction, must be rejected on the facts of this case. For nothing in the record indicates that the Texas Court of Criminal Appeals knew anything about the nature of Carter's attack on the 1969 and 1962 convictions in federal court other than that these convictions were in fact being attacked on some grounds. We have examined Carter's habeas petitions in state court carefully and find no reference to the nature of the claims being raised in federal court. Moreover, we have carefully compared the claims raised in Carter's habeas petitions in No. 74–H–1603 with those raised in his state habeas petition in No. 178,126–B (which were incorporated into the petition in No. 178,126–C), and we find that the state petition raises new claims attacking the 1969 and 1962 convictions not found in Carter's petitions in No. 74–H–1603. Since the Texas courts could not know which, if any, of the state and federal claims were identical, we must conclude that the identity of the claims raised in federal and state court is apparently irrelevant for the purposes of *Ex parte Green*: it is enough that both pending actions deal with the "same matter," i.e., the 1969 and 1962 convictions.

However, if "same matter" refers to "same conviction", one might well ask why the Court of Criminal Appeals dismissed the attack on the 1974 conviction as well as the attacks on the 1969 and 1962 convictions,

for only the latter two constituted the "same matter". Apparently, what Texas has done is adopt a rule analogous to that of this circuit in *Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir. 1978), that where a federal petition contains a mixture of exhausted and unexhausted claims, the entire petition will be dismissed, including the exhausted claims. (The Supreme Court has recently decided in favor of a "total exhaustion" rule of this type in *Rose v. Lundy*, —— U.S. ——, 101 S.Ct. 1198, 71 L.Ed.2d 379 (1982).) The analogy to *Galtieri* is that where a state habeas petition contains some claims pending in federal court, the whole petition will be dismissed. We are strengthened in this conclusion by the fact that the Court of Criminal Appeals' opinion in *Ex parte McNeil* specifically refers to *Galtieri* for support.

The decision by the Texas courts to dismiss all claims when only some of them attack the same convictions as are pending in federal court may be based on a familiar rationale in the law of habeas corpus: the avoidance of piecemeal litigation. The State of Texas has previously expressed the desire that habeas petitioners, insofar as it is reasonably possible, bring all of their claims at one time to the Texas courts for determination. *See, e.g., Ex parte Carr*, 511 S.W.2d 523 (Tex.Cr.App.1974). The desire that habeas claims, where possible, be brought together in one proceeding underlies this circuit's en banc decision in *Galtieri v. Wainwright, supra*, and the Supreme Court's recent pronouncement in *Rose v. Lundy, supra*, for the reasons described in those opinions. Some of Carter's claims attack the 1974 conviction via an attack on the enhancing 1969 and 1962 convictions, while others attack the 1974 conviction by itself without reference to the earlier convictions. If the Texas courts dismiss only the former sorts of claims and retain and pass upon the latter, they will be creating the very sort of piecemeal litigation they desire to avoid.

---

**6.** Moreover, the Court of Criminal Appeals' opinion in No. 178,126–B did state that it would dismiss because Carter was attacking the same conviction (No. 178,126) in state and federal court.

There is a further but related reason why the Court of Criminal Appeals may have dismissed all of Carter's claims. The determination of the validity of the 1969 and 1962 convictions in federal court may have a significant impact on the validity of the 1974 sentence in state court. If one of the two prior convictions is held invalid in federal court, the sentence in the 1974 conviction will automatically "unravel," because the prior convictions were used to enhance that sentence. Thus if conservation of judicial resources is the desideratum, postponement of hearing any claims attacking the 1974 sentence may be desirable since resolution of the claims pending in federal court may place Carter's state claims in a considerably different posture.

Whatever the reasons for the extension of the habeas abstention doctrine of *Ex parte Green* to Carter's case, the result is that because some of Carter's challenges to the 1974 conviction are based upon attacks on convictions currently being challenged in federal court, no attack on the 1974 conviction may proceed in state court. Because the effect of the Texas rule is central to our disposition of this case, we now examine the consequences which flow from that rule in some depth.

*III. The Consequences of Habeas Abstention.*

Our analysis of Texas case law has led us to the following general rule: Assume that a petitioner has been convicted of a felony A, and this conviction A is later used to enhance the sentence in a subsequent conviction for felony B. Assume further that the petitioner raises a claim or set of claims (call it "A1") attacking his conviction A in the state courts, whether by direct appeal or state collateral review procedures. If his claim is exhausted in the state courts, it may be heard through a habeas petition in the federal courts. *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Assume that A1 is thus pending in the federal courts. In the meantime, petitioner has been tried and convicted of felony B. He now raises in a state habeas proceeding claims B1 and B2, attacking conviction B. B1 is an attack on B which makes no reference to and does not depend on the validity of A. B2, on the other hand, is an attack on B on the grounds that A, the conviction used to enhance B, is invalid. The rule which the Texas courts appear to have adopted here is that if B1 and B2 are now raised in state court, and an attack on A is pending in federal court, the "same matter" is pending for purposes of *Ex parte Green*, and the state court will refuse to hear *both* B1 and B2. This is true even though the attack on A in B2 may not be identical to that in A1,[7] and even though B1 contains no attack on A at all. Apparently, the fact that any challenge to A exists in both state and federal courts is enough to prevent the Texas courts from hearing the entire petition.

This rule is not without difficult consequences for a petitioner who seeks to present claims involving successive convictions in an efficient and orderly fashion. Again assume that A1 has just been exhausted and has just been filed in federal court. The petitioner now seeks to attack the new conviction B on the basis of claims B1 and B2. He may not bring B1 and B2 directly to the federal court because they are not exhausted. But he cannot bring them in a habeas petition in state court to exhaust them, for then state and federal courts would be passing on the "same matter" (B2 and A1) under the meaning of the Texas rule and so both B1 and B2 would be dismissed. This means that he must either dismiss A1 in federal court or wait until that claim is completely exhausted in the federal courts before he may begin the entire process of exhaustion over again in state courts with B1 and B2.

Of course, it may be objected that the simpler and better solution is simply to dismiss A1 and exhaust B1 and B2 first.

---

7. As stated earlier, the identity of the claims raised in federal and state court is apparently irrelevant for the purposes of *Ex parte Green*.

It is enough that both pending actions deal with the "same matter", i.e., the same conviction.

But this, too, has its problems. If any of the grounds in A1 are particularly meritorious, it seems unfair to require the petitioner to remain incarcerated so that B1 and B2 may be tested in the state courts first. This is especially so if B1 and B2 are novel or uncertain claims. The petitioner is then put to a strategic choice which is at odds with the fundamental purposes of the Great Writ—to have meritorious claims heard and vindicated and illegal incarceration ended with swift dispatch. Moreover, whichever path petitioner chooses—holding off the former claim until the latter claims are exhausted or the latter until the former is passed on in the federal courts—there is the very real danger that the delayed claim or claims will become stale and difficult of proof with the passage of time. Witnesses may die unexpectedly, memories may fade or cloud, and evidence may be lost, damaged, or destroyed. It is always true that these dangers are inherent whenever litigation is protracted. But it is clear that they would be greatly aggravated here because each set of new claims may not be pursued immediately as it arises. This defeats an orderly and efficient presentation of claims through the state and federal systems.

That is not the worst of it. Our underlying assumption up until now has been that the collateral attack on the petitioner's new conviction B is begun before proceedings of any substance with respect to A1 occur in federal court. But there is no reason to believe that every case will be so fortuitous in its timing. Indeed, it is equally likely that the habeas attack on B would begin during an evidentiary hearing on A1, or after its completion, or on appeal to this court, or even during the pendency of a petition for certiorari to the Supreme Court. If the petitioner is well into the middle of federal consideration of his prior claims, a tremendous waste of judicial resources is expended by forcing him to dismiss his earlier claims until the later ones can "catch up" with them. And if the choice is made the other way, and the attack on B set aside instead, federal consideration of A1 may drag on for years. Either way, the petitioner, trapped in a procedural snarl of epic proportions, is caught in the middle. He remains in jail, and the purposes of the Great Writ are twisted beyond recognition.

■ The problems just described are a result of the time delay between the filing of A1 and the filing of the habeas attack on B in state court. When one is dealing with multiple convictions, a time lag between attacks on earlier and later convictions will almost always exist of necessity. Indeed, under Texas law A cannot even be used for enhancement of B to a life sentence unless A has become final prior to the commission of the offense which is the subject of conviction B. *E.g. Carter v. State*, 510 S.W.2d 323 (Tex.Cr.App.1974); *Rummel v. Estelle*, 587 F.2d 651, 656 (5th Cir. 1978); *aff'd*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (both discussing predecessor to present enhancement statute Tex.Pen.Code Ann. § 12.42 (West)). Given this fact, a time lag between the filing of a habeas attack on A and on B is virtually certain; consequently the probability is considerable that petitioners attacking multiple convictions will be ensnared in the difficulties caused by the time lag and Texas habeas law.

This is precisely the situation in which Carter now finds himself. The Texas courts have told him that no attack on the 1974 conviction is possible while attacks on the 1969 and 1962 convictions are pending in federal court. Carter now applies to the federal courts, seeking to extricate himself from the procedural tangle the habeas abstention rule has created. That tangle exists because Carter must begin his collateral attack in the state courts; the reason he may not bring his 1974 claim to federal court to begin with is because he is required to exhaust available state remedies first. Carter comes to us now and states that he has presented his double jeopardy claim to the state courts and that they have rejected consideration of it because of the habeas abstention rule. He asks that we consider his claim exhausted, which would free him from the Hobson's choice the habeas abstention rule would otherwise put him to.

The State of Texas argues that the Court of Criminal Appeals has never passed on the claim because of the very same habeas abstention rule; thus the State argues that Carter's double jeopardy claim cannot be said to be exhausted.

The question before us is simple to state but difficult to resolve: has Carter exhausted his state remedies? Mechanical applications of prior exhaustion doctrine will not answer this question for us, for Texas presents us with a unique procedural situation. Instead we must focus on the purposes underlying exhaustion doctrine and consider what result is most in harmony with those purposes. This we now proceed to do.

*IV. The Basic Framework of Exhaustion Doctrine: Comity and Compromise.*

■ The seminal case on the requirement of exhaustion is *Ex parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). In that case, the petitioner claimed that the Virginia statute he had allegedly violated was unconstitutional and sought federal habeas relief while he was still awaiting trial. The federal circuit court dismissed the writ and the Supreme Court affirmed. In so doing, it stated the two principles upon which exhaustion doctrine rests. The first principle is that the federal courts always possess the power to grant the writ without exhaustion due to the federal judiciary's basic purpose and duty of protecting and vindicating federal constitutional rights.[8] The second principle is that as a matter of judicial discretion, federal courts should allow the state courts the first opportunity to vindicate these federal constitutional rights; in this way, due respect for state institutions will be given and needless fed-

eral-state interference avoided. 117 U.S. at 251, 6 S.Ct. at 740.

The exhaustion requirement was the response to an inevitable tension between state and federal interests created by the historical importance of the Great Writ in Anglo-American law and the system of dual sovereignty at the heart of the American Constitution. The federal interest was in a sure and speedy method of remedying unconstitutional incarceration—for this was the very purpose of the Great Writ—and since 1867, the federal courts had been empowered to exercise that remedy with respect to state convictions. The state interest, on the other hand, was in an orderly functioning of its own judicial processes without needless interference by the federal government.

> As it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity for the state court to correct a constitutional violation, the federal courts sought a means to avoid such collisions. Solution was found in the doctrine of comity between courts, a doctrine which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

*Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950) (footnote omitted).

The comity spoken of in *Darr v. Burford* necessarily involves a balancing of both state and federal interests, of orderly state judicial administration and speedy vindication of constitutional rights.[9] The exhaus-

---

**8.** That the requirement of exhaustion is not based on lack of jurisdictional power to issue the writ but rather is an accommodation of state interests has been reaffirmed many times. *E.g., Fay v. Noia*, 372 U.S. 391, 420, 83 S.Ct. 822, 838, 9 L.Ed.2d 837 (1963); *Bowen v. Johnston*, 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939); *Galtieri v. Wainwright*, 582 F.2d 348, 354 (5th Cir. 1978).

**9.** The Supreme Court has explained that:

> The exhaustion doctrine is a judicially-crafted instrument which reflects a careful balance between important interests of federalism and the need to preserve the writ of habeas corpus as a "swift and imperative remedy in all cases of illegal restraint or confinement." *Secretary of State for Home Affairs v. O'Brien*, [1923] A.C. 603, 609 (H.L.).

tion doctrine is a compromise which reflects the interests and needs of both federal and state systems. The principle of comity means that the federal courts are not usually able to grant an immediate remedy given the requirement of exhaustion. On the other hand, the state judicial process can hear a petitioner's constitutional claims immediately and indeed has a duty to pass on them every bit as great as the federal courts have.

> Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 490, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973). Cf. Younger v. Harris, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971), in which Justice Black eloquently stated the principles upon which "Our Federalism" rests:
>> The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

10. Another example of the compromise is the fact that while state judicial process is allowed to proceed without interference from the federal courts, the state process is not completely immune from federal supervision. After exhaustion of state remedies, a petitioner may still go into a federal forum to have his federal claims heard again, even if fully and fairly litigated by the state courts, Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), and even though this denial of res judicata effect might in other contexts show an insufficient respect for state judgments. See Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). It is interesting to note that this aspect of the compromise continues to be fine-tuned by succeeding decisions of the Court. See Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (full and fair litigation of Fourth Amendment claims in the state courts will preclude later federal collateral attack).

The careful balancing of state and federal interests is present throughout exhaustion doctrine. For example, the principle that states should be given the right to consider constitutional claims using the complete corpus of state judicial machinery might, if taken to its full extreme, be thought to preclude habeas relief whenever any state remedy remains available. Thus, after exhausting appellate remedies, a

In sum, the notion of comity which underlies the exhaustion doctrine must be understood not as a capitulation of federal power to state interests; rather, comity involves a delicate balance and compromise of both state and federal concerns.[10] For as much as the unchanneled exercise of habeas corpus by the federal courts would disrupt the integrity of the state criminal process, so too would an unthinking subservience to state sovereignty

petitioner would be relegated to the state's own habeas procedures, and then to repeated habeas applications if those were permitted. However, the Supreme Court has rejected that view and has not extended the principle that far. All that comity requires is that the issue in question have been presented once to the state's highest court, either on appeal or on collateral attack, and repeated applications, even if permitted by state law, are not necessary. Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953). Nor is exhaustion necessary if the state's interpretation of federal law changes between the exhaustion of state remedies and the filing of a petition for federal habeas corpus. Galtieri v. Wainwright, 582 F.2d 348 (5th Cir. 1978). However, this circuit has understood the principle that the state courts be given the first right of consideration to extend to cases where there is a change which provides an effective state procedure or there is a fundamental change in federal interpretation of substantive federal law between the original exhaustion of state remedies and the filing of the federal petition. Id. In such cases, this circuit has struck the balance in favor of a return to state procedures.

The balancing of federal and state interests extends even to questions of the substantive scope of habeas relief. Compare Rose v. Mitchell, 443 U.S. 545, 562, 99 S.Ct. 2993, 3003, 61 L.Ed.2d 739 (1979), with Stone v. Powell, 428 U.S. 465, 491 n. 31, 96 S.Ct. 3037, 3051, n. 31, 49 L.Ed.2d 1067 (1976) (considerations of federalism different with respect to habeas enforcement of judicially-created rule of exclusion in Fourth Amendment and enforcement of Fourteenth Amendment rights against jury discrimination where former has only recently been applied to states and is only a judicially-created remedy and latter are directly applicable to states and are personal constitutional rights). Cf. Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (enforcement of state-created contemporaneous objection rule in habeas cases dictated by principles of federalism and comity).

render the time-honored Writ of Liberty sterile and nugatory. Comity requires sensitive accommodation, and not simply slavish adherence, to the interests of the states.

*V. Exhaustion as Fair Opportunity.*

█ The basic compromise which underlies all of exhaustion doctrine requires that the state courts be given the first opportunity to pass upon the petitioner's federal claims. *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). Exhaustion normally "requires only that the federal claim have been fairly presented to the highest court of the State, either on direct review of the conviction or in a post-conviction attack." *Escobedo v. Estelle*, 650 F.2d 70, 72 (5th Cir.), *modified on petition for rehearing*, 655 F.2d 613 (1981); *Ogle v. Estelle*, 592 F.2d 1264, 1267 (5th Cir. 1979); *Galtieri, supra*, at 353–54. Thus, if the substance of the petitioner's claims is brought to the state court's attention, the fact that the court does not explicitly pass on the claims is irrelevant to the question of exhaustion, because the opportunity to consider them has been presented. *Smith v. Digmon*, 434 U.S. 332, 333–34, 98 S.Ct. 597, 598–599, 54 L.Ed.2d 582 (1978) (per curiam); *Francisco v. Gathright*, 419 U.S. 59, 60, 95 S.Ct. 257, 258, 42 L.Ed.2d 226 (1974) (claim was exhausted even though Virginia Supreme Court declined to review petitioner's conviction on direct appeal and affirmed by order); *Escobedo v. Estelle, supra*, at 75 (dismissal by Texas Court of Criminal Appeals without opinion satisfied exhaustion requirement); *Carr v. Alabama*, 586 F.2d 462 (5th Cir. 1978).

█ As a matter of comity the petitioner will usually be required to follow the normal appellate or post-conviction procedural routes for raising his claim in the state's

highest court; the use of extraordinary writs or other abnormal or seldom-used avenues of relief is generally not considered a proper method of exhaustion when normal methods are available.[11]

█ If a petitioner wishes to exhaust his claims he is expected not only to use the normal avenues of relief but also to present his claims before the courts in a procedurally proper manner according to the rules of the state courts. *Brown v. Estelle*, 530 F.2d 1280 (5th Cir. 1976); *Tooten v. Shevin*, 493 F.2d 173 (5th Cir. 1974), *cert. denied*, 421 U.S. 966, 95 S.Ct. 1957, 44 L.Ed.2d 454 (1975). In *Brown* we held that the petitioner's application for writ of mandamus to the Texas Supreme Court did not meet the requirements of exhaustion, not because the writ was not a proper avenue of relief in the circumstances of the case, but rather because the application was not submitted by an attorney as required by Texas law. Because there was no reason to believe that the petitioner would not be able to receive assistance of counsel so that the application could be properly made, the petitioner was required to comply with the procedural rule.

However, *Brown* made clear that the requirement that a petitioner should follow state procedural rules in exhausting his claims is not an inflexible one; "we would not permit a state procedural rule or practice to frustrate vindication of federal constitutional rights where it is unfairly applied or puts an undue burden on a petitioner." 530 F.2d at 1284. Thus with respect to the state procedural rule involved in *Brown* the court stated that "[i]f petitioner is unable to obtain the assistance of counsel that . . . the Texas Supreme Court require[s] . . . we will deem these state remedies exhausted." *Id.*

11. *E.g. Pitchess v. Davis*, 421 U.S. 482, 488, 95 S.Ct. 1748, 1752, 44 L.Ed.2d 317 (1975) (per curiam) (application for writ of prohibition denied by California Supreme Court could not be fairly read as an adjudication on the merits of the claim presented; state remedies held not exhausted where claim could be raised on normal post-trial direct appeal); *Ex parte Hawk*, 321 U.S. 114, 116, 64 S.Ct. 448, 449, 88 L.Ed. 572 (1944) (application for extraordinary writ

did not serve to exhaust state remedies where normal state channels for review were available); *Tooten v. Shevin*, 493 F.2d 173 (5th Cir. 1974), *cert. denied*, 421 U.S. 966, 95 S.Ct. 1957, 44 L.Ed.2d 454 (1975) (denial of writ of prohibition to the Florida Supreme Court prior to state trial was insufficient for purposes of exhaustion where trial and appellate courts in Florida had yet to consider merits of claim).

The compromise of interests which underlies exhaustion doctrine requires that the federal courts assure themselves that the state courts have had a fair opportunity to pass on a petitioner's claims before they assume habeas jurisdiction; however what constitutes a "fair opportunity" is not necessarily coextensive with whatever procedural requirements the state may choose to impose. That is the lesson of *Brown v. Estelle*, and we have applied this reasoning repeatedly. *E.g., Ogle v. Estelle, supra; Houston v. Estelle*, 569 F.2d 372 (5th Cir. 1978). In *Houston*, the Texas Court of Criminal Appeals had refused to pass on the merits of some of the petitioner's claims because the introductory list of grounds of error asserted in petitioner's state brief did not give specific references to the pages in the record where the alleged trial errors occurred. Because the brief thus failed to comply with the formal requirements of Tex.Code Crim.Pro.Ann. art. 40.09, § 9 (West), the Court of Criminal Appeals did not consider the claims even though page references were present in the actual argument sections of petitioner's brief and even though the State's brief in opposition was apparently perfectly able to identify and discuss the portions of the record in question. A panel of this circuit held that the

petitioner had exhausted state remedies as there could be no doubt that a fair opportunity to pass on the claims was presented to the Texas courts. 569 F.2d at 375–76. The court acknowledged Texas' right to prescribe procedural rules such as the proper form of briefing, but stated that "it does not necessarily follow, however, that perfect compliance with such rules of briefing is always a prerequisite to the exercise of federal habeas corpus jurisdiction." [12] We are in full agreement. The question of whether a state has had a "fair opportunity" to consider a petitioner's constitutional claims is one for the federal courts to decide with all due respect for the integrity of state judicial processes; whether the state believes it has had an opportunity to pass upon the claims in light of its various procedural requirements is an important factor in this determination, but it is not dispositive.[13]

*Brown v. Estelle* spoke of the problem of state procedural rules which might unduly hinder or burden a habeas petitioner and how exhaustion doctrine must react with flexibility in such situations. These concerns lead us to still another aspect of exhaustion doctrine which is relevant to this case: the adequacy and effectiveness of state remedial procedures in general.

---

**12.** *See also Lenza v. Wyrick*, 665 F.2d 804 (8th Cir. 1981) (petitioner's point raised in brief did not state "wherein and why" trial court erred in conformity with state procedural rules; claim held exhausted since substance of the complaint was before the state court); *Morrow v. Wyrick*, 646 F.2d 1229 (8th Cir.) *cert. denied*, 454 U.S. 899, 102 S.Ct. 401, 70 L.Ed.2d 216 (1981) (same); *Tifford v. Wainwright*, 588 F.2d 954 (5th Cir. 1976) (failure by petitioner to produce a trial transcript due to indigency did not rob Florida courts of a fair opportunity to consider his claims).

**13.** We hasten to point out that the question whether a petitioner has sufficiently complied with state procedures in raising his claims is a different one from the question of procedural default and waiver which was considered in *Fay v. Noia* and later in *Wainwright v. Sykes*. *Engle v. Isaac*, —— U.S. —— at —— n.28, 102 S.Ct. 1558, at 1570 n.28, 71 L.Ed.2d 783 (1982); *Wainwright, supra*, 433 U.S. 72, 78–81, 97 S.Ct. 2497, 2502–2503, 53 L.Ed.2d 594 (distinguishing the exhaustion requirement from the issue of procedural default). *Wainwright v. Sykes* deals with the problem of when the petitioner's

failure to raise a timely objection at trial creates an adequate state ground which prevents consideration of the petitioner's federal constitutional questions. In fact, the rule in *Sykes* presupposes that at the time the petitioner files his habeas petition in federal court, he has no available state remedy, because the contemporaneous objection rule prevents further consideration of his claims by the state courts. Thus when *Sykes* applies, the petitioner's claims are likely to be exhausted within the meaning of § 2254(b). *See Engle v. Isaac, supra*, at —— n.28, 102 S.Ct. at 1570 n.28. Conversely, in the procedural default situation with which exhaustion doctrine is concerned, the petitioner has preserved his claim through objection at trial or is otherwise able to present it in the state courts; it is his later failure to comply with other state procedures which raises the question of exhaustion. The federal courts must then consider whether despite the lack of compliance, the state has been given a fair opportunity to consider the constitutional claims.

## VI. Adequacy and Effectiveness of State Procedures.

■ We have seen that the doctrine of exhaustion, an embodiment of the principle of comity, is the result of a delicate balancing of federal and state interests. Underlying the compromise is the assumption that although immediate access to a federal forum for speedy resolution of federal claims is not possible, the state court system will be able to address the petitioner's claims as he works his way through that system. Of course, this assumption itself rests upon a still deeper one; namely, the belief that state courts are, in good faith, equally willing and able to protect federal constitutional rights as the federal courts. Indeed, *Ex parte Royall* made that assumption explicitly when it stated that the circumstances in the cases before it did not

> suggest any reason why the State court of original jurisdiction may not, without interference upon the part of the courts of the United States, pass upon the question which is raised as to the constitutionality of the statutes under which the appellant is indicted. The Circuit Court was not at liberty, under the circumstances disclosed, to presume that the decision of the State court would be otherwise than is required by the fundamental law of the land, or that it would disregard the settled principles of constitutional law announced by this court, upon which is clearly conferred the power to decide ultimately and finally all cases arising under the Constitution and laws of the United States.

117 U.S. at 252, 6 S.Ct. at 740. Thus at the very core of exhaustion doctrine is the requirement that state procedures be adequate and effective, for it is only because these procedures are adequate to vindicate federal constitutional rights that the forbearance of the federal courts from swift consideration of habeas corpus claims is justified. If the state procedures do not provide a *bona fide* forum for a petitioner's constitutional claims or merely delay and hinder ultimate resolution, the foundations upon which exhaustion doctrine rests are dissolved. The balancing of interests which is always inherent in the doctrine of comity then tips in favor of immediate consideration of petitioner's claims through federal habeas proceedings.

The present codification of the exhaustion requirement, 28 U.S.C. § 2254(b), speaks directly to this problem. It states that exhaustion of state remedies is required unless "there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." *See Rose v. Lundy*, —— U.S. ——, —— n.7, 102 S.Ct. 1198, 1202 n.7, 71 L.Ed.2d 379 (1982) (exhaustion doctrine does not bar relief where state remedies are inadequate); *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (exhaustion requirement presupposes that prisoner's state remedy must be adequate and available); *Young v. Ragen*, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333 (1949) (same).[14]

14. An early precursor of the statutory rule may be found in *Ex parte Royall* itself, where it was suggested that in cases of urgency, or cases involving foreign relations or where state process would be in conflict with special national interests, exhaustion was not required. 117 U.S. at 252, 6 S.Ct. at 740. An exception for this and other "special circumstances" has always existed. *Darr v. Burford*, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950); *White v. Ragen*, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348 (1945); *Ex parte Hawk*, 321 U.S. 114, 117, 64 S.Ct. 448, 450, 88 L.Ed. 572 (1944). *See e.g., Cunningham v. Neagle*, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890) (United States deputy marshal, held on charge of homicide committed in the performance of his duty to protect Justice Field, discharged on habeas corpus from state custody). *See generally* Annotation, 54 L.Ed.2d 873, 888–891 (1978); Hart and Wechsler, The Federal Courts and the Federal System 1491–1492 (2d ed. 1976). Moreover, *Ex parte Hawk* (decided at a time when re-litigation of federal claims was not permitted in habeas proceedings after a full and fair hearing in the state courts) had held that "where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy, ... or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate, ... a federal court should entertain [the prisoner's] petition for habeas corpus, else he would

It is because state procedures may not always be adequate or effective that courts have treated the exhaustion requirement with flexibility. In some cases where the state procedures are found wanting the courts will speak of the claims as not requiring exhaustion; in others the claims are considered "technically exhausted." *Galtieri, supra*, at 354.

The exceptions to the exhaustion doctrine illustrate the tension between the swift vindication of the petitioner's constitutional rights and the comity principles undergirding the doctrine. Whether the reason for reaching an unexhausted claim is termed a satisfaction of or an exception to the doctrine, it is clear that the federal court must weigh the conflicting interests served by the federal writ of habeas corpus and by the exhaustion doctrine before addressing the merits of an unexhausted claim. Exceptions to the exhaustion doctrine have been developed judicially to cover situations where mechanical adherence would not further the goals of the exhaustion doctrine or would frustrate an overriding federal concern.

*Id.* Thus, it has been held that exhaustion is not necessary where resort to state remedies would be futile [15], because the necessary delay before entrance to a federal forum which would be required is not justified where the state court's attitude towards a petitioner's claims is a foregone conclusion.[16]

The courts have also held that where the state processes cause undue delays to the hearing of petitioner's claims in special circumstances, a petitioner's claims may be treated as technically exhausted.[17] Once again, this exception makes sense in the context of the underlying compromise between swift vindication of rights which is the purpose of the Great Writ and accommodation of the somewhat slower but normal judicial processes of the state courts. Where the state processes are unduly and unreasonably delayed through no fault of the petitioner, the terms of the compromise must be re-evaluated.[18]

Most important for our purposes, the exhaustion requirement has not been applied mechanically where it is shown that the state's procedures for exhaustion are so

be remediless." 321 U.S. at 118, 64 S.Ct. at 450.

15. *E.g., Layton v. Carson*, 479 F.2d 1275 (5th Cir. 1973), and cases cited therein at 1276 (state supreme court recently rendered an adverse decision in identical case and no reason exists to believe that state court will change its position); *Galtieri, supra*, at 354–55 n. 13; *Reed v. Beto*, 343 F.2d 723 (5th Cir. 1965), *aff'd. on other grounds, Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

16. One commentator has well expressed the connection between the futility doctrine and the underlying compromise of federal and state concerns implicit in the exhaustion doctrine:

This futility doctrine may seem difficult to reconcile with the theory of exhaustion. A state's corrective procedures may be fully effective to vindicate meritorious federal claims, and futility may merely reflect a lack of substantive merit. But just as a petitioner is not required to seek relief from the state again and again, it makes little sense, given the costs of delay, to require a petitioner to present the state courts with a claim recently and firmly rejected by them. Limited to such cases, the futility doctrine is sound. It both reflects the harshness of requiring a habeas applicant to postpone his federal hearing un-

til he has completed a useless progression through the state remedial machinery and forestalls the wasteful use of judicial resources resulting from vain applications to state courts. Moreover, where state courts have adopted an inflexible and erroneous view of a federal claim, prompt federal review will hasten correction of state court errors and improve the role of the state courts as enforcers of federal law.

Note, *Developments in the Law-Federal Habeas Corpus*, 83 Harv.L.Rev. 1038, 1099–1100 (1970) (footnotes omitted).

17. *E.g., Rheuark v. Wade*, 540 F.2d 1282 (5th Cir. 1976) (delay in preparation of trial transcript for appeal); *Dixon v. Florida*, 388 F.2d 424, 425 (5th Cir. 1968) ("[A]n inordinate and unjustified delay in the state corrective process may well result in the frustration of petitioner's rights and be such a circumstance to render that process ineffective"); *Galtieri, supra*, at 354 n. 12 and cases cited therein. *See generally* 17 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4264 at 645 & n. 52 (1978) and cases cited therein.

18. *See Dixon v. Florida*, 388 F.2d 424, 426 (5th Cir. 1968).

cumbersome, complex and confusing that they frustrate good faith attempts to comply with them. The classic statement of this principle is that of Justice Rutledge concurring in *Marino v. Ragen*, 332 U.S. 561, 68 S.Ct. 240, 92 L.Ed. 170 (1947). *Marino* was one of a series of cases in which the Supreme Court attempted, with only partial success, to fathom the complexities of Illinois remedial law.[19] Justice Rutledge argued that the petitioner in *Marino* should be considered to have exhausted his remedies:

> This rule, requiring exhaustion of state remedies as a condition precedent to federal relief, has been firmly established by repeated decisions of this Court. Even in extreme situations its application has been justified by sound administrative reasons. But it has always been clear that the rule may be applied only on the assumption that an adequate state remedy is actually available.... And it would be nothing less than abdication of our constitutional duty and function to rebuff petitioners with this mechanical formula whenever it may become clear that the alleged state remedy is nothing but a procedural morass offering no substantial hope of relief. Experience has convinced me that this is true of Illinois.
>
> . . . .
>
> The trouble with Illinois is not that it offers no procedure. It is that it offers too many, and makes them so intricate and ineffective that in practical effect they amount to none. The possibility of securing effective determination on the merits is substantially foreclosed by the probability, indeed the all but mathematical certainty, that the case will go off on the procedural ruling that the wrong one of several possible remedies has been followed.
>
> . . . .
>
> The exhaustion-of-state-remedies rule should not be stretched to the absurdity of requiring the exhaustion of three separate remedies when at the outset a petitioner cannot intelligently select the proper way, and in conclusion he may find only that none of the three is appropriate or effective.
>
> . . . .
>
> The Illinois scheme affords a theoretical system of remedies. In my judgment it is hardly more than theoretical. Experience has shown beyond all doubt that, in any practical sense, the remedies available there are inadequate. Whether this is true because in fact no remedy exists, or because every remedy is so limited as to be inadequate, or because the procedural problem of selecting the proper one is so difficult, is beside the point. If the federal guarantee of due process in a criminal trial is to have real significance in Illinois, it is imperative that men convicted in violation of their constitutional rights have an adequate opportunity to be heard in court. The opportunity is not adequate so long as they are required to ride the Illinois merry-go-round of habeas corpus, coram nobis, and writ of error before getting a hearing in a federal court.
>
> Consequently, as far as I am concerned, the Illinois remedies are exhausted here....

332 U.S. at 564–69, 68 S.Ct. at 242–244 (Rutledge, J., concurring) (footnotes omitted).

Although Justice Rutledge spoke for only three justices in his concurrence to *Marino v. Ragen*, his words and his reasoning there have been continually cited with approval by the federal courts. *E.g., Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); *Codispoti v. Howard*, 589 F.2d 135 (3rd Cir. 1978); *Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir. 1978); *United States ex rel. Smith v. Jackson*, 234 F.2d 742 (2d Cir. 1956). Thus, this circuit has stated in its en banc decision in *Galtieri, supra*, that "[e]xhaustion ought not be re-

**19.** The other cases were *White v. Ragen*, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348 (1945); *Woods v. Nierstheimer*, 328 U.S. 211, 66 S.Ct. 996, 90 L.Ed. 1177 (1946); *Loftus v. Illinois*, 334 U.S. 804, 68 S.Ct. 1212, 92 L.Ed. 1737 (1948); *Young v. Ragen*, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333 (1949); and *Jennings v. Illinois*, 342 U.S. 104, 72 S.Ct. 123, 96 L.Ed. 119 (1951).

quired when the 'state procedural snarls or obstacles preclude an effective state remedy.' " 582 F.2d at 354 n.12 (quoting *Bartone v. United States*, 375 U.S. 52, 54, 84 S.Ct. 21, 22, 11 L.Ed.2d 11 (1963)).[20]

### VII. Has Carter Exhausted?

We now apply these principles to the case before us. Carter argues that he presented his double jeopardy claims in No. 178,126–C, and that this presentation gave the Texas courts an adequate and fair opportunity to pass upon these claims. The fact that the Court of Criminal Appeals dismissed the petition without reaching the merits is, he contends, of no consequence under *Smith v. Digmon.* Thus, Carter argues, he has met the requirements of exhaustion doctrine.

The State of Texas argues in response that this case involves a failure to abide by proper state procedures in the manner in which Carter presented his claims; the State relies on *Brown v. Estelle* and *Tooten v. Shevin* for the proposition that this procedural defect prevents Carter from claiming that he has exhausted state remedies. It is important to understand what this argument amounts to. The State of Texas is not arguing that Carter had chosen an abnormal path in reaching the Texas Court of Criminal Appeals to present No. 178,126–C. Nor does the State argue that No. 178,-126–C was not properly filed in the original convicting court and properly appealed to the Court of Criminal Appeals. Nor does Texas argue that the form of briefing was inadequate or that Texas courts were unaware of the substantive nature of Carter's claims. Indeed the only procedural defect which the State of Texas seems to be able to point to is that Carter filed his state habeas petition while No. 74–H–1603–A was pending in the federal courts; Carter thus became the victim of a new extension of the principles of *Ex parte Green*, hitherto unannounced, and applied for the first time

in his case. Nevertheless, the State of Texas argues that whether newly developed or not, the habeas abstention doctrine prevents the Texas courts from passing upon Carter's double jeopardy claim; therefore it cannot be said that Texas has had a real opportunity to consider the claim, and hence Carter cannot be said to have exhausted it.

Yet this argument proves too much. If the result of the Texas habeas abstention rule is as the State says it is—if the Court of Criminal Appeals has absolutely no choice in the matter but may not consider Carter's double jeopardy claim on the merits—the conclusion to be drawn from this is not that Carter has not exhausted but that he had no available state remedy at the time he filed No. 178,126–C. And if his application and its subsequent dismissal proves that he has no available state remedy, he must be considered to be exhausted. 42 U.S.C. § 2254(b) and (c).

The State argues in reply to this that, on the contrary, Carter did, and still does, have an available state remedy. Carter cannot be said to have exhausted his state remedies because the Texas courts are willing to hear his claims as soon as his federal litigation is finished or dismissed. The fact that this litigation may drag on for years, or that substantial judicial resources have already been expended by the federal courts and would be wasted by a dismissal is claimed to be irrelevant. As long as the Texas courts are willing to hear Carter's claims if they are presented in a procedurally proper fashion (i.e., with no federal claims pending), Carter cannot be said to have offered the state courts a fair opportunity to pass upon his state claims.

The State's argument is based upon a set of assumptions which we think inconsistent with the purposes of the Great Writ. Restated, the argument is that an available

**20.** *Cf. Fay v. Noia*, 372 U.S. 391, 435, 83 S.Ct. 822, 847, 9 L.Ed.2d 837 (1963) which overturned the rule of *Darr v. Burford* that exhaustion of state remedies required petition to the United States Supreme Court after an adverse decision in the State Supreme Court: "[O]ur

decision today affects all procedural hurdles to the achievement of swift and imperative justice on habeas corpus." The doctrine of *Darr v. Burford* was seen as an unnecessary and burdensome complication of the exhaustion requirement and hence was overruled.

state remedy is not open to Carter now, but will be at some point in the future. The remedy will become available when Carter finishes his federal litigation. If Carter is unwilling to wait that long, it is his choice to dismiss his federal claims. At that point, the state will consider his attack on the 1974 conviction.

■ This argument begins with the idea that a state remedy which is not now available to a petitioner but will be at some point in the future requires the petitioner to wait until the remedy does become available. But this assumption has never formed a part of exhaustion doctrine. A petitioner must, of course, comply with proper state procedures in applying for *presently available* remedies offered by the state. However, the fact that a state remedy may be theoretically available at some distant point in the future does not require a petitioner to languish incarcerated until state procedures are complied with. An instructive example of this is *Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). In *Peyton*, the United States Supreme Court overturned the "prematurity" rule of *McNally v. Hill*, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934), which stated that a petitioner serving the first of two consecutive sentences could not attack the second sentence on habeas corpus. After *Peyton*, it was no longer necessary for a petitioner to wait until the second sentence had officially begun before a federal court would consider him "in custody" under that sentence and thus a proper applicant for habeas corpus relief.

However, the decision in *Peyton* raised a crucial issue of exhaustion doctrine. Many states still had a similar prematurity rule restricting access to state habeas procedures until service of the sentence under attack was properly begun. *See generally* Note, *Habeas Corpus and the Prematurity Rule*, 66 Colum.L.Rev. 1164, 1166–68 (1964). In a state which retained the prematurity rule, a strict view of the exhaustion requirement would still have forced the petitioner to delay his application for federal relief. This is because state remedies would even-

tually be available as soon as all prior sentences had been served, and federal relief was not available until state remedies were exhausted.

The Supreme Court dismissed this possible interpretation of exhaustion doctrine in *Peyton v. Rowe*. Noting that Rowe had filed an application in Virginia state court which was denied under Virginia's version of the prematurity rule, the Supreme Court described Rowe as having exhausted state remedies. 391 U.S. at 56 & n.2, 88 S.Ct. at 1550 & n.2. Similarly, other federal courts had construed exhaustion doctrine as not requiring that the petitioner comport with a state's prematurity rule before seeking relief in federal court: *Williams v. Peyton*, 372 F.2d 216 (4th Cir. 1967); *Pannell v. Peyton*, 287 F.Supp. 866 (W.D.Va.1968); *Tibbs v. Peyton*, 287 F.Supp. 858 (W.D.Va. 1968); *see Via v. Peyton*, 284 F.Supp. 961 (W.D.Va.1968) (state prisoners seeking to attack future sentences have no effective remedy in the courts of Virginia, and are not required to exhaust remedies where circumstances make remedies ineffective and futile). However, once Virginia changed its habeas corpus remedy to abolish the prematurity rule, the federal courts once again deferred to the state courts on the grounds of comity. *See Strouth v. Peyton*, 404 F.2d 537 (4th Cir. 1968) (Although at the time of filing of original habeas petition, no remedy existed in state court, abolishment of state prematurity doctrine, expansion of available remedies in state courts, doctrine of comity and fact that the petitioner presently had petition pending in state court made abstention by federal court the better course.).

It may be objected that *Peyton v. Rowe* and its related cases are distinguishable upon a very important ground. In *Peyton*, the petitioner who wished to attack his second sentence in the state courts had no choice regarding how long he would have to wait before he could bring his state claim given the state's prematurity rule: That decision was made for him by the length of the first sentence he was then serving. On the other hand, Carter can have his state

claims relating to his 1974 conviction heard any time he wants to: he need only dismiss his federal suit attacking the 1969 and 1962 convictions. The key to the state courthouse is in his hands, so to speak. If he does not wish to have his state claim heard immediately, that is his choice and he must bear the consequences of it.

We think this argument misses the point. The crux of the matter is whether is it legitimate for a habeas petitioner to be put to such a choice in the first place. The rule just described permits federal adjudication of the habeas claims relating to all three convictions to be held hostage to the demands of the Texas habeas system. As has been stressed before, comity and federalism require sensitive accommodation of competing interests by both the states and the national government. Each must give due respect for the other's needs and goals. Here, the state habeas rule would greatly hinder speedy federal court consideration of either Carter's 1974 conviction or his earlier convictions, depending upon the course he chooses.

 We have spent a considerable amount of time earlier in this opinion explaining how the Texas habeas abstention rule creates a procedural logjam which delays potentially meritorious claims, burdens litigants who seek a federal forum for claims already dismissed by the States, acts as a snare for the unwary and wastes the judicial resources of the federal courts. All of these problems with the rule are present in this case. We think the choice which Texas seeks to put Carter to is untenable; it cannot be considered to present him with an adequate and effective state remedy, and exhaustion doctrine does not require us to hold otherwise. Instead, we hold that when Carter's petition No. 178,126–C was dismissed from the Texas Court of Criminal Appeals, there was at that point no available state remedy which was also an adequate remedy.[21] Thus he has met the requirements of §§ 2254(b) and (c).[22]

21. The Texas Court of Criminal Appeals dismissed Carter's double jeopardy claim even though the claim did not involve an attack on a prior conviction being challenged in federal court. As discussed earlier, we have no reason to assume that the double jeopardy claim raised alone now would be heard by the Texas courts while No. 74–H–1603–A is pending. Moreover Texas' policy of discouraging piecemeal litigation and the abuse of the writ doctrines developed to enforce that policy suggest the opposite. See *Ex parte Dora*, 548 S.W.2d 392 (Tex.Cr.App.1977); *Ex parte Carr*, 511 S.W.2d 523 (Tex.Cr.App.1974). Nor has either party even suggested that the double jeopardy claim could be raised by itself while the federal action is pending. In view of these factors, we think it would be unjust to remand Carter to the state courts on the basis of a theoretical possibility that an adequate state remedy exists for his double jeopardy claim.

22. Carter urges upon this court an additional reason why he should not be put to the choice of dismissing his federal suit or delaying his state suit. The sentences for his 1969 and 1962 convictions, which he attacks in No. 74–H–1603–A, have already been served. Carter argues that if he dismisses the federal action and has his 1974 conviction overturned by the state courts, he will be unable to raise the claims in No. 74–H–1603–A in another federal habeas action. This is because, he claims, the custody requirements of § 2254 would no longer be satisfied. Carter is apparently relying on the statement in *Carter v. Hardy*, 526 F.2d 314, 315 (5th Cir.), cert. denied, 429 U.S. 838, 97 S.Ct. 108, 50 L.Ed.2d 105 (1976), that "[h]abeas corpus lies essentially to challenge illegal restraint; the writ is not available where the sentence challenged has been fully served and is not being used for enhancement purposes." *Accord, Escobedo v. Estelle*, 650 F.2d 70, *modified on petition for rehearing*, 655 F.2d 613 (5th Cir. 1981).

We note that it is still an unsettled question in this circuit to what extent the use of an earlier sentence for enhancement purposes in a present sentence satisfies the custody requirement for the purpose of an attack on the former sentence. *See generally Escobedo v. Estelle, supra* (suggesting that requirement may be satisfied, if, according to the rule of *Sinclair v. Blackburn*, 599 F.2d 673, 676 (5th Cir. 1979), cert. denied, 444 U.S. 1023, 100 S.Ct. 684, 62 L.Ed.2d 656 (1980), petitioner can show a positive, demonstrable relationship between the prior conviction and the petitioner's present incarceration.) Relying on *Escobedo* and the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the State of Texas suggested at oral argument that the custody requirements in No. 74–H–1603–A may not be presently met even now due to a failure by Carter to make proper objections to the use of the 1969 and 1962 convictions at his 1974 sentencing hearing. *See Escobedo, supra*, 655 F.2d at 615 n. 4. The State has also argued

Our holding is limited to the facts before us, and should not be read to encourage bad faith attempts by petitioners to place themselves in procedural snarls deliberately in a attempt to bypass state consideration of their claims on the merits.[23] It seems clear to us that the expansive reading which the Texas Court of Criminal Appeals gave to its state abstention doctrine in this case could not have been predicted by Carter, and it is not reasonable to suggest that he cleverly arranged matters so as to be in the position he now finds himself in.

It is enough for us in this case to say that Carter has brought his double jeopardy claim to the state courts, the state courts have dismissed this claim (among others), and he has at present no adequate and effective state remedy available to him. Carter has exhausted the claim he has brought to us and we now consider it on the merits.

### VIII. The Double Jeopardy Claim.

As we recounted at the beginning of our opinion, Carter was indicted and convicted for embezzlement in 1972. This conviction was reversed in 1974 by the Court of Criminal Appeals because of a failure by the state to prove that the owner of the embezzled funds was the same as that alleged in the indictment. *Carter v. State*, 510 S.W.2d 323 (Tex.Cr.App.1974). Carter was subsequently reindicted, tried and convicted in 1974. It is this conviction he seeks to overturn.

■ The factual background and the reasons for the reversal of the 1972 conviction are described concisely in the Court of Criminal Appeals' opinion in *Carter v. State*; we quote the relevant portions:

The State's proof was that Andrew Dolce was the president of Consolidated Productions, Incorporated, a seller of plastic toys and animals, and that appellant was employed as a sales representative for that corporation, by virtue of which, so Dolce testified, appellant became his agent. Appellant's duties consisted of calling on and securing orders for the plastic items from schools and related organizations interested in selling the items in fund raising projects. Generally the orders secured were entered on an order form on which there was a prominently printed notice that all checks

---

that the claims in No. 74–H–1603–A should be dismissed in any case for failure to exhaust state remedies. However, these questions are not properly before us; they are for the decision of the district court judge who is hearing that case. We must and will assume that Carter's action in No. 74–H–1603–A is both properly in federal court and potentially meritorious.

We think that even if Carter could bring a new federal action after dismissal of 74–H–1603–A, putting him to such a choice is inconsistent with the purposes of the Writ and is a considerable waste of federal judicial resources. The habeas petition in question was first filed in 1974; the attacks on the 1969 and 1962 convictions were made by amendment in 1975. The opening section of this opinion has detailed the protracted procedural skirmishing engaged in by both sides and the considerable efforts of five federal judges and magistrates in coping with the legal contentions of the parties. Seven years after Carter's 1975 amendment his claims in No. 74–H–1603–A are finally ready to be heard by a federal district judge. To suggest that in order to have his attack on his 1974 conviction heard by the Texas courts, Carter dismiss his petition No. 74–H–1603–A and start the process of attacking the prior convictions

all over again seems unreasonably wasteful and dilatory.

23. We are fully aware that a rule as complicated as the one Texas has created would present opportunities for such bad faith maneuvering. For example, a petitioner might attempt to "leapfrog" his claims into the federal courts as follows: first he brings A1 in state court, then, without exhausting it first, brings B2 in federal court. The state courts dismiss A1 and he then brings A1 in federal court claiming exhaustion because he has no available remedy in state court. However where such bad faith can be shown there is no reason to extend to these petitioners the same aid we would give to petitioners who are, through no fault of their own, caught in the quagmire of the Texas habeas abstention rule. Moreover the federal courts have already developed a considerable caselaw beginning with *Fay v. Noia* which specifically deals with the identification of bad faith attempts by habeas petitioners to circumvent available state remedies. We have no doubt that this jurisprudence can be successfully adapted to the problems of bad faith in this context as well.

were to be made payable to Consolidated Productions, Inc.

Some of the checks issued in payment for orders secured by appellant were made payable to and received by Consolidated Productions, Inc.; however, other checks were made payable to either the corporation and appellant or to appellant and were received by appellant. These latter checks were deposited in a bank account and withdrawn by appellant; the proceeds from these checks were not received by the corporation. The office manager of the corporation testified that all payments should have been remitted to the corporation, and that as a result of appellant's activities, the corporation sustained a loss of approximately $40,000. Andrew Dolce testified that, although appellant had authority to receive the checks in his capacity as agent and remit the money to the corporation, he did not give appellant authority or permission to convert the checks to his own use and benefit. Dolce was not asked if, and he did not testify that, he was the owner of the money alleged to have been embezzled by appellant, or that, as president of the corporation, he had the care, control and management of such funds.

In brief, the trial court charged the jury to find appellant guilty if they found that appellant was the agent and employee of Andrew Dolce and that he did embezzle and convert to his own use without the consent of Dolce the money belonging to Dolce that had theretofore come into the possession of appellant by virtue of his employment as such agent and employee.

Having alleged ownership of the money to be in Andrew Dolce, the State was required to prove that essential allegation, *Easley v. State*, 167 Tex.Cr.R. 156, 319 S.W.2d 325 (1959), . . .

510 S.W.2d at 325–26. The Court of Criminal Appeals added that the State could, had it chosen, have requested an instruction that Dolce could be held to be a special owner of the funds and upon proof of special ownership, there would be no variance under the doctrine of *Lawhon v. State*, 429 S.W.2d 147 (Tex.Cr.App.1968), *cert. denied*, 394 U.S. 989, 89 S.Ct. 1475, 22 L.Ed.2d 764 (1969). However, the court found that not only had the State not requested a special ownership instruction, but even had the instruction been given there was insufficient evidence of special ownership.

In *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the Supreme Court held that reversal of a conviction by an appellate court for evidentiary insufficiency creates a bar to reprosecution under the double jeopardy clause. This interpretation was applied to the states in the companion case of *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). Carter asserts that *Burks* and *Greene* apply to the reversal in *Carter v. State*, and that the subsequent 1974 conviction violated the double jeopardy clause.[24]

The ownership of the funds Carter embezzled was an essential element of the offense charged. *Carter v. State, supra.* In *Easley v. State*, 167 Tex.Cr.R. 156, 319 S.W.2d 325 (1959), relied on in *Carter*, the Court of Criminal Appeals explained that "[i]t was the province of the state to so allege ownership, but in doing so it assumed the burden of establishing and proving ownership as alleged." *Id.* The Court of Criminal Appeals held that the State failed to offer evidence of the ownership as alleged. It therefore reversed. This action by the Court of Criminal Appeals was a

---

**24.** Since the overturning of Carter's 1972 conviction occurred prior to the decisions in *Burks* and *Greene*, the retroactivity of these decisions is a threshold question. However, we held recently in *Bullard v. Estelle*, 665 F.2d 1347 (5th Cir. 1982), that *Burks* does apply retroactively, and applied it to a habeas attack on the sentencing phase of a state trial. Thus our decision in *Bullard*, involving a challenge to a state trial, necessarily involved not only retro-active application of *Burks* but also retroactive application of *Greene*, which applied the rationale of *Burks* to the states through the fourteenth amendment. *See Bullard, supra*, at 1354 n.14. Texas has also applied *Burks* retroactively to its own decisions. *Ex parte Reynolds*, 588 S.W.2d 900 (Tex.Cr.App.1979), *cert. denied*, 445 U.S. 920, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980).

ruling by that court " 'whatever its label, [which] actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.' " *United States v. Scott*, 437 U.S. 82, 97, 98 S.Ct. 2187, 2197, 57 L.Ed.2d 65 (1978) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977) (bracketed material added in *Scott* )). Because the State failed in its proof of the ownership of the funds, the case should never have gone to the jury. Hence, under *Burks*, the reversal is the equivalent to a directed verdict of acquittal by the trial judge. 437 U.S. at 16–18, 98 S.Ct. at 2149–2150. *Accord, Bullard v. Estelle*, 665 F.2d 1347, 1354 (5th Cir. 1982). Double jeopardy thus applies; the 1974 retrial and conviction was constitutionally impermissible.

The State of Texas attempts to avoid this conclusion by claiming that the reversal of the 1972 conviction was for trial error. Under the doctrine of *Burks*, a reversal of a conviction because of insufficiency of the evidence is to be treated as an acquittal, but there is no double jeopardy bar if the reversal is for trial error. Examples given in *Burks* of such trial errors are reversal for incorrect receipt or rejection of evidence, incorrect or prejudicial instructions and prosecutorial misconduct. 437 U.S. at 14–15 & n.8, 98 S.Ct. at 2148–2149 & n.8.

> [R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect . . .

437 U.S. at 15, 98 S.Ct. at 2149.

Texas seeks to characterize the error in Carter's 1972 trial as one not of failure of proof of an essential element but merely as failure as to the manner of proper proof.

This argument is based upon an interpretation of *Compton v. State*, 607 S.W.2d 246, 249 (Tex.Cr.App.1980) (en banc) (on motion for rehearing), *cert. denied*, 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 197 (1981). In *Compton*, the defendant had been indicted for theft of $10,000.[25] The indictment alleged that the money was owned by a J. Howard Coonen. Coonen was a regional manager for International Harvester Corporation, and the proof at trial showed that the funds taken were those of International Harvester. The conviction was originally reversed by the Court of Criminal Appeals and a judgment of acquittal was entered, with the Court citing to *Burks* and *Greene*, 607 S.W.2d at 249. On rehearing, the Court of Criminal Appeals reversed its earlier decision and affirmed the conviction. It did so on the basis of a reinterpretation of the meaning of the word "owner" as generally defined in the Texas Penal Code. Under Tex.Pen.Code Ann. § 1.07(a)(24) (West), the owner of property is one who has (1) title, (2) possession, or (3) a greater right to possession than the defendant. Prior case law had held that alternative (3) only applied in cases of joint interest in the property between the "owner" and the defendant. *E.g., McGee v. State*, 572 S.W.2d 723 (Tex. Cr.App.1978). This meant that in most cases the ownership alleged in the indictment could only be demonstrated by showing title or possession, or else relying on a theory of special ownership. None of these demonstrated in the 1972 conviction. In *Compton*, however, the Texas Court of Criminal Appeals overruled *McGee* and held that ownership could be established by showing a greater right to possession even though there was no showing of a joint interest.

The State of Texas has not argued that because the law regarding the definition of ownership changed with *Compton, Compton* should be given retroactive application, that the decision in *Carter v. State* was in error, and double jeopardy should not attach.

**25.** After the 1973 revision of the Texas Penal Code, the offense of embezzlement was consolidated with various other offenses into the single offense of theft. Tex.Pen.Code Ann. § 31.-02 (West).

Nor would such an argument succeed. Double jeopardy barred reprosecution immediately after reversal by the appellate court, this being equivalent to an acquittal by the trial judge. As stated above the requirement for double jeopardy to attach is that there be a "resolution [in the defendant's favor], *correct or not,* of some or all of the factual elements of the offense charged." *Scott, supra,* 437 U.S. at 97, 98 S.Ct. at 2197 (quoting *Martin Linen, supra,* 430 U.S. at 571, 97 S.Ct. at 1354) (emphasis added). Thus even were the appellate court's decision based upon a wrong view of the law as understood at the time of the decision, double jeopardy would attach if the reversal were based on a perceived insufficiency of the evidence. *See Bullard v. Estelle, supra,* at 1355 n.17 (acquittal by jury, trial judge, or appellate court have all been given same effect by Supreme Court). *See also Sanabria v. United States,* 437 U.S. 54, 64, 98 S.Ct. 2170, 2178, 57 L.Ed.2d 43 (1977) (fundamental nature of the double jeopardy rule is manifested by its explicit extension to situations where an acquittal is based upon a egregiously erroneous foundation); *Scott, supra,* 437 U.S. at 98, 98 S.Ct. at 2197 (fact that acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles affects accuracy of determination but not its essential character as an acquittal).

Texas' argument based on *Compton* is not one of retroactivity; rather the state seeks to use *Compton* to show that the definitions of ownership in § 1.07(a)(24) go not to the element of the offense which must be alleged and proven but only to the manner of proving them. The elements remain unchanged after *Compton,* argues the State; it is only the "manner of proof" which has been expanded. The State concludes that "manner of proof" is a problem akin to admissibility of evidence rather than evidentiary sufficiency. Since reversals based on errors of admissibility of evidence are reversals based on trial error, the argument goes, so should reversals based on "manner of proof."

We think that the State's argument is based upon a distinction without a difference. It is true that since *Compton* it is easier to prove a case of theft in a corporate context than it was previously. But the reason for this is that the substantive scope of the offense has been enlarged. As the Court in *Compton* made clear, it was basing its decision on the view that "the Legislature intended to *expand the class of individuals to be protected* from theft." 607 S.W.2d at 250–51. (emphasis added). "Manner of proof" is expanded only insofar as the elements of the offense are also expanded though statutory interpretation. Because the element of ownership now comprehends more potential persons who may be mentioned in the indictment, the State now has an increased number of ways to prove its case. But prove it it must; having alleged an owner, it must offer testimony of particular *facts* to support its allegations. In other words, we deal here not with a question of evidentiary admissibility or of a defect in the trial procedures, but a question of whether "certain facts existed and ... an appellate determination of insufficient evidence at [the] proceeding to establish those facts." *Bullard, supra,* at 1354.

We are confirmed in this view by the action of the Texas Court Criminal Appeals in *Compton* itself. Before rehearing, the Court of Criminal Appeals, using the older interpretation of ownership (and the one applied in *Carter v. State*), had held that the State had failed in its proof of ownership and had dismissed the case for *evidentiary insufficiency.* The court then held that *Burks* and *Greene* were a bar to reprosecution. Had the Texas Court of Criminal Appeals viewed the case as involving only trial error, it would not have invoked *Burks* and *Greene* to reverse the judgment to one of acquittal. We are of course not required to accept without question the state court's own characterization of what constitutes trial error as opposed to evidentiary sufficiency, *Bullard, supra,* at 1359–60; however in this case the characterization conforms with our own view and is moreover consistent with language in *Carter v. State, supra,* and *Easley v. State,*

*supra.* We thus are able to defer to this characterization with some confidence. *Compare Bullard, id.* & n.25 *with Tapp v. Lucas,* 658 F.2d 383, 385 (5th Cir. 1981) (federal court could and would defer to a state court's view of error as trial error which was clearly a correct characterization).

The State of Texas argues that there can be no insufficiency of the evidence of constitutional magnitude, relying on *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); the State argues that a rational trier of fact could certainly have found Carter guilty at his first trial; hence double jeopardy should not attach even after the Texas Court of Criminal Appeals reversed for evidentiary insufficiency.

Reliance on *Jackson v. Virginia* is misplaced. We rejected the same argument when it was made in *Bullard.* 665 F.2d at 1360 n.27.

The State of Texas' final argument is that, assuming that the proof offered by the State was "technically insufficient" at Carter's first trial, the proper remedy is to give Carter a second trial. Because the defect at his first trial was remedied at the 1974 trial, the jury properly instructed and sufficient proofs given, the State argues that Carter has already received the only remedy which is due him. The State argues that invalidating the second trial gives Carter an unjust windfall after he has already received the benefit of a second trial, which is all that the Constitution should require.

This argument stands the double jeopardy clause on its head. If Carter has received a verdict of acquittal (or its equivalent under *Burks* : a finding of evidentiary insufficiency from a trial or appellate court), double jeopardy automatically attaches. At the risk of belaboring the obvious, this means that he may not be brought to trial again on the same charge. *E.g., Burks, supra,* 437 U.S. at 11, 98 S.Ct. at 2147; *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). The purported fairness of any second trial is wholly irrelevant. For the second trial is not the remedy—it is the violation itself.

The sum of our analysis in this opinion leads to a single conclusion: Carter's 1974 trial and conviction violated the double jeopardy clause of the fifth amendment, as applied to the states through the fourteenth amendment. The judgment of the district court, granting Carter a writ of habeas corpus, is affirmed.

AFFIRMED.